## BALL & ROLLER BEARING CO. v. F. C. SANFORD MFG. CO.

(District Court, D. Connecticut.    May 6, 1922.)

No. 1529.

1. Patents ☞328—Reissue 15,035, for roll grinding machine, held valid as a reissue.

The Heim reissue patent, No. 15,035, for a roll grinding machine, *held* not to broaden the claims of the original patent, and valid as against objections to the reissue.

2. Patents ☞17—Changing polishing machine to obtain grinding machine involves only mechanical skill.

The art of polishing and the art of grinding iron rolls are interrelated, and so close together that the obvious changes in a polishing machine to obtain a grinding machine involves only mechanical skill.

3. Patents ☞17—Transferring construction from wood-working art to metal-working art, and adding conveyor of stream of water, involves only mechanical skill.

Taking a construction from the wood-working art, or any other art employing a polishing or grinding mechanism, and transferring it to the metal-working art, or attaching thereto a device for conveying a stream of water on the work to keep it cool, involves nothing more than mechanical skill.

4. Patents ☞328—Claims of reissue 15,035 held anticipated, and other claims valid, but not infringed.

Claims 1, 2, 4, 6–10, 12, 13, 15, 18–21 of the Heim reissue patent, No. 15,035, for a roll-grinding machine, *held* invalid in view of the prior art, and the remaining claims, excepting claim 3, valid but not infringed.

5. Patents ☞17—Attaching of device for laterally adjusting support of rolls being ground does not involve invention.

The making and attaching to a roll-grinding machine consisting of a grinding wheel and an oppositely rotating regulating wheel in combination with means for supporting the blanks being ground, of means for laterally adjusting the carrier or work support, involves mere mechanical skill, and does not rise to the dignity of invention.

6. Patents ☞328—1,264,930, claims 1 and 4, for roll-grinding machine, invalid as aggregations.

Claims 1 and 4 of the Heim patent, No. 1,264,930, for a roll-grinding machine, consisting of a rotary peripheral grinding wheel, an oppositely rotating regulating wheel, and means for supporting the blanks while being ground, etc., *held* invalid, as for mere aggregations.

7. Patents ☞328—1,210,936, for feeding device for roll-grinding machines, not infringed.

Claims 2–6, inclusive, of the Heim patent, No. 1,210,936, for feeding device for roll-grinding machines, *held* not infringed; claims 4 and 6, calling for a carrier with a removable wearing strip, being limited to a strip having a plurality of wearing surfaces, and not covering a cylindrical rod, under the doctrine of equivalents.

In Equity.    Suit by the Ball & Roller Bearing Company against F. C. Sanford Manufacturing Company.    Decree for defendant.

Livingston Gifford, Robert S. Blair, and William T. Knieszner, all of New York City, for plaintiff.

William W. Dodge, of Washington, D. C., and F. W. Smith, of Bridgeport, Conn., for defendant.

THOMAS, District Judge. This suit was brought for an injunction and accounting, and is predicated upon an alleged infringement of letters patent No. 1,210,936, issued January 2, 1917, on a "feeding device for roll-grinding machines," and No. 1,264,930, issued May 7, 1918, for a "roll-grinding machine," to both of which patents were later added reissued letters patent No. 15,035, for a "roll-grinding machine," under date of January 25, 1921. All three patents were issued to Lewis R. Heim and were subsequently assigned to the plaintiff.

All formal matters, such as title, manufacture, and sale, have been stipulated, and there appears to be no vital controversy as to the construction of defendant's forms of alleged infringing machines. So that the issues between the parties raise the questions of the validity of the patents and their infringement by the defendant.

The defenses to the patents in suit are: (1) Noninfringement. (2) Anticipation by prior patents and publications. (3) Nonpatentability. And as to the reissue patent, No. 15,035, an additional defense is set up, to wit, that it was unlawfully granted, and hence void.

The art disclosed by these inventions relates to the means or method by which roller bearings are manufactured in large quantities, rapidly, accurately, and at a minimum cost, and all three characteristics are to-day vitally essential to a successful manufacturer. The inventions relate to centerless grinders; that is to say, to machines in which the work or the blank roll is neither supported on spindles, nor lathe centers, nor held in a chuck or other centering device, as is usual in turning cylindrical bodies in a lathe, and which was previously one of the methods employed in the manufacture of a roll for a roller bearing.

Speaking generally, the patents in suit disclose a grinding machine comprising a grinding wheel generally made of natural or artificial stone such as grindstones, or wheels of emery or carborundum or similar abradant facings, having relatively high speed, and an oppositely rotating governing or regulating wheel having a relatively low speed and co-operating with the grinding wheel, in combination with means disposed between said wheels for supporting the blanks while being ground; means being provided for yieldingly pressing one of said wheels toward the other, and also means for limiting the movement of said wheels toward each other. The work support or blank carrier is vertically and laterally adjustable; provision being made for effecting an angular adjustment in a vertical plane of said support, so as to vary the rate of speed of the blanks along said support with a given rate of drive of the machine. In addition, means are provided for guiding the blanks up to the operating surfaces of the wheels, and means adapted to receive the rolls as they pass out of the grip of said surfaces. The leading feature of this general construction, as claimed by the plaintiff, is the provision of a three-sided channel, formed by the operative surfaces of the grinding wheel, the regulating wheel, and the work support. The grinding wheel, due to its high speed, insures the work remaining on the upper surface of the support, and the regulating wheel, which travels upwardly, or backward with respect to the downwardly moving grinding wheel, and has a secure grip on the work,

forces it along the support, in whatever direction it has a component along the support.

Patent No. 1,210,936 relates to the carrier or work support alone. The device described in this patent includes a carrier, by which the rolls are conducted to a position to be operated upon, and by which they are carried past the operative surfaces, in combination with a trough secured to the inner end of the carrier by which the ground rolls are conducted away from the operative surfaces. There is, furthermore, provided a wearing strip in said carrier, which is removable and has a plurality of faces, which may be used successively. The carrier is pivoted to a slotted body to enable it to swing in a vertical plane, so as to give it the most convenient degree of inclination to the grinding and regulating wheel.

## The Reissued Patent.

It is urged by the defendant that the reissue, as such, is invalid, because of (1) the introduction of new matter and the broadening of the patent and the claims; (2) the alteration of drawings; (3) laches; and (4) intervening rights.

[1] From an examination of the file wrapper and contents of both the original and reissued patents introduced in evidence, I am satisfied that the additions to the specification and the changes of the drawings are fully supported by the original patent, and that the claims have not been broadened, but, on the contrary, narrowed. True, applicant waited about 3 years and 8 months before attempting to correct his original patent, but the excuse offered is held to be sufficient, and was justly held so to be by the Commissioner of Patents. The claim respecting intervening rights hardly merits serious consideration, and the defendant should be the last to raise this question; it having intervened through knowledge acquired from a former employee of the plaintiff.

Holding the reissue valid, the next question to consider is: In what respect does defendant's machine differ, if it differs at all, from the machines and devices disclosed by the patents in suit? In defendant's machine means are lacking to permit relative vertical adjustment between the carrier and one of the wheels. It appears from the record, and I am satisfied, that defendant's machine furnishes work supports of varying heights to suit different diameters of work. The work support in defendant's machine includes a carrier, in the form of a cylindrical rod, which may be turned to present to the work new supporting surfaces; but this cylindrical rod has not attached to it a discharge spout, nor is it pivoted to a slotted or any other body. No other essential difference is found, and particularly none in the mode of operation, as the wheels on defendant's machine move or rotate in opposite directions, the same as in the plaintiff's machine, and the relative angular relation of the carrier and the path of the operative surface of the regulating wheel is just as much variable in defendant's machine as in plaintiffs. The fact that defendant changes the inclination of the regulating wheel in relation to the work support, and that the patents in suit show and describe machines in which the work support is angularly changed in relation to the regulating wheel, in no way changes the

situation, as the claims of the reissued patent are, in this respect, readable on both constructions.

This brings us to the question of anticipation. A large part of the record is taken up by the testimony of experts on this question. Unfortunately, in cases of this kind, the experts seem to be bent on one purpose, and that is, not to agree on any one point. Instead of being, as they should be, helpful to the court by pointing out differences of function or operation, they advance, as it seems to me, theories which becloud the issue to such an extent that a heavy burden is imposed upon the court. They also seem to feel it their duty to explain at length the meaning of words and phrases which are clear and can be understood, whether or not one is versed in mechanics; and what makes it still worse is that in most instances the ordinary and common meaning of words and phrases is not employed, but only such as will not, in the opinion of the witness, hurt the cause of the litigant for whom he is testifying. The situation, however, is clear enough in this case, so that the court can decide the questions presented upon this issue without having reference to the lengthy opinions of the experts. What the Circuit Court of Appeals said in Kohn v. Eimer, 265 Fed. 900, at page 902, is particularly apposite to the case at bar.

[2, 3] It cannot be questioned that the art of polishing and the art of grinding are interrelated. They stand so close together that it could not be seriously contended that it would require more than mechanical skill to make the desired and obvious changes in a polishing machine to obtain a grinding machine. Furthermore, in view of the state of the art, to contend that it requires more than mechanical skill to bodily take a construction from the wood-working art, or any other art employing a polishing or grinding mechanism, and transfer it to the metal-working art, is to contend for a proposition the mere statement of which compels its rejection. So, also, to contend that it is new and requires invention to substitute a wood-working tool for a metal-working tool, and attach to it a device for conveying a stream of water on the work to keep it cool, is to contend for a principle which is not recognized in the law of patents.

[4] Taking up the three patents in suit, one after the other, it appears that the general principle described and claimed in the reissued patent No. 15,035 is clearly described in British patent No. 12,190, issued to Lowman on June 10, 1905, United States letters patent No. 967,798, issued to Lowman on August 16, 1910, and the United States letters patent No. 1,111,254, granted to French & Stephenson on September 22, 1914. All that is lacking in the disclosure of these patents is the means which permit relative vertical adjustment between the carrier or work support and one of the wheels. True, the Lowman British patent permits the concave ledge 8 to be vertically raised or lowered; but this is not done in order to accommodate the machine to rolls of different diameters. The British specification clearly describes that, and says that, in order to accommodate the machine to rolls of different diameters, the controlling device or wheel 11 is moved toward or away from the grinding disc.

[5] Claims 1, 2, 4, 6, 7, 8, 9, 10, 12, 13, 15, 18, 19, 20, and 21 of the reissue patent are therefore held to be invalid, in view of the prior art. Even granting that the aforementioned reference patents do not clearly show nor describe means for laterally adjusting the work support, it must be held that the making and attaching of such an adjusting device would not rise to the dignity of invention, but is within the realm of mechanical skill. The remaining claims of the reissued patent, except claim 3, which is not in suit and is not passed upon, are held to be valid, but not infringed, as defendant's machines do not embody means for vertically adjusting the work support.

## Patent No. 1,264,930—Roll-Grinding Machine.

The defendant is sued only under claims 1 and 4 of this patent. The machine described in this patent differs only from that in the reissued patent in that a peripheral grinding wheel and an oppositely rotating peripheral regulating wheel are shown. Claims 1 and 4 are as follows:

"1. A grinding machine comprising a rotary peripheral grinding wheel having a relatively high speed, an oppositely rotating regulating wheel having a relatively low speed and co-operating with said peripheral grinding wheel, means between said wheels for supporting the blanks while being ground, and means for yieldingly pressing one of said wheels toward the other."

"4. A machine for grinding cylindrical or like blanks comprising a peripheral grinding wheel rotating at a relatively fast speed, a peripheral regulating wheel adjacent said grinding wheel, and rotating at a relatively low speed in the opposite direction, said wheels being relatively yieldingly mounted, spring-controlled means for forcing said wheels toward each other, a blank support, and means for limiting the movement of said wheels toward each other."

[6] If these claims are valid, and can be taken at their face value, they are clearly infringed. It appears, however, that the machines defined in the claims differ from the machine shown in the reissued patent in one respect only—they specify "peripheral" wheels. This is the only limitation. The combination otherwise set forth in these claims was old and well known in the art at the time the application for this patent was filed in the Patent Office; the several elements being clearly shown and described in the reissued patent, the original of which was granted prior to the filing date of this patent. Leaving out the limitation mentioned—that is to say, the word "peripheral"—the claims could and should have been made in the original of the reissued patent. If the plaintiff thought that the use of "peripheral" grinding and governing wheels was new, their combination should have been claimed per se. The claims in suit, therefore, must be held to be aggregations and hence invalid.

## Patent No. 1,210,936—Feeding Device for Roll-Grinding Machines.

[7] The claims under which the defendant is sued on this patent are 2 to 6, inclusive. They are as follows:

"2. A roll-feeding device for grinding machines, comprising a carrier by which the rolls are conducted to a position to be operated upon and by which they are carried past the operative surfaces and a trough secured to the inner end of the carrier by which the ground rolls are conducted away from the operative surfaces.

"3. A roll-feeding device for grinding machines, comprising a carrier by which the rolls are conducted to a position to be operated upon and by which they are carried past the operative surfaces, a wearing strip in said carrier, and a trough secured to the inner end of the carrier by which the ground rolls are conducted away from the operative surfaces.

"4. A roll-feeding device for grinding machines, comprising a slotted body, a carrier pivoted in the slot, said carrier being provided with a groove, and a removable wearing strip in said groove having a plurality of faces, which may be used successively.

"5. A roll-feeding device for grinding machines, comprising a body having a slot, a carrier pivoted in said slot to swing in the vertical plane and means for locking the carrier at any required adjustment.

"6. A roll-feeding device for grinding machines, comprising a body, a carrier and a removable wearing strip in the carrier having a plurality of wearing surfaces."

It will thus be seen that claim 2 is limited to a roll-feeding device, wherein a trough is secured to the inner end of the carrier, by which the ground rolls are conducted away from the operating surfaces. This element, as above stated, is missing in defendant's construction. What has been said in reference to claim 2 is equally applicable to claim 3.

Claim 4 calls for a carrier provided with a groove and a removable wearing strip in said groove having a plurality of faces which may be used successively; the carrier being pivoted in the slot of a supporting body. This combination cannot be found in defendant's machine. The same is true of claim 5.

As to claim 6, it is to be noted that defendant's machine does not include a carrier and a removable wearing strip therein having a plurality of wearing surfaces. This construction must be held to be limited to a strip having distinct and separate surfaces, one to be used after another. Defendant's cylindrical rod does not come under the terms of this definition.

My conclusion is that the claims in suit are not infringed, some of the same, as above set forth claiming combinations not present in defendant's machine, and others being limited to the particular construction therein set forth. There is no room left for the doctrine of equivalents, as removable wearing strips are old and well known, as is shown in patent to Guppey, No. 1,034,362, dated July 30, 1912. A cylindrical rod could be considered a removable wearing strip, but its construction does not permit of presenting a distinct and new surface when needed.

There may be a decree for the defendant in accordance with this opinion; and it is so ordered.