### BALL & ROLLER BEARING CO. v. F. C. SANFORD MFG. CO.

(District Court, D. Connecticut. June 9, 1923.)

No. 1529.

1. **Patents ⬤⇒32—Presumption that issued patent expresses invention not conclusive.**

While courts should lean toward the presumption that an issued patent expresses invention, and should favor the affirmative in a doubtful case, no duty rests on a tribunal to transpose mechanical intelligence into genius.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Patents ⟸17—Improvement which is an obvious result to one skilled in the art is not invention.**

While minute changes in the organization, or even merely in the arrangement of a machine may, on occasion, amount to true invention, that occasion must be one where such change results, not only in a marked improvement, but in an improvement that is not an obvious result, which one skilled in the art would have foreseen.

On rehearing. Former opinion adhered to.

For former opinion, see 280 Fed. 415.

Livingston Gifford, Robert S. Blair, and William T. Knieszner, all of New York City, for plaintiff.

William W. Dodge, of Washington, D. C., and F. W. Smith, of Bridgeport, Conn., for defendant.

THOMAS, District Judge. In an opinion filed May 6, 1922, it was held that certain claims in suit of the Heim reissue patent, No. 15,035, were invalid in view of the prior art; that certain other claims were not infringed; that the claims in suit of patent No. 1,264,930 were aggregations, hence invalid; that the claims in suit of patent No. 1,210,936 were not infringed (280 Fed. 415), in consequence of which judgment for the defendant was ordered. Thereupon plaintiff petitioned the court for a "partial rehearing," limiting its petition to "so much of this case as is involved in the decision of the court that claims 1, 2, 4, 6, 7, 8, 9, 10, 12, 13, 15 (?), 18, 19, and 21 of the reissue patent in suit are invalid. * * * *"

Upon final hearing and in its main brief, plaintiff strenuously urged upon the court the validity and infringement by defendant of all the patents, but in its memorandum attached to its petition for rehearing plaintiff apparently concedes the correctness of the court's decision, other than upon the holding specifically set forth in this petition, for the memorandum says:

"With much, if not most, of the opinion of the court we heartily agree. * * * But there is one vitally important matter in which we think the decision of the court was based on a radical misunderstanding. * * * The court in substance holds claims 1, 2, 4, 6 to 10 inclusive, 12, 13, 15 (?), and 18 to 21, inclusive, invalid. * * * Accordingly * * * we respectfully petition that this subject be reheard and reconsidered."

At the outset the defendant urged that the petition be dismissed, first, because of irregularity of procedure; second, because of entire absence of any adequate grounds for rehearing; and, third, because of unexcused and inexcusable laches in presenting the petition. It is unnecessary to discuss or decide these claims, because I deem it advisable, on account of the importance of this litigation to the respective parties, to discuss at some length the reasons which compel the conclusion that the claims of the plaintiff must be overruled, so that the issues raised in this case may be finally determined, at least so far as this court is concerned.

Reissue patent, No. 15,035, was held invalid as to claims 1, 2, 4, 6–10, 12, 13, 15, 18–21, in view of British patent No. 12,190 to Lowman, June 10, 1905; United States patent No. 967,798 to Lowman, August

16, 1910; and United States patent No. 1,111,254 to French & Stephenson, September 22, 1914. Plaintiff, in its endeavor to convince the court of error in this ruling, has presented a "memorandum" of considerable length, illustrated with seven charts and a printed brief, replete with diagrams to illustrate differences between the disclosure of the reissue patent and the disclosures of the cited prior art. Defendant has replied with a printed brief, contesting plaintiff's brief point by point, and plaintiff's rejoinder consists of a copy of defendant's brief in the margins of which are printed voluminous and not infrequently caustic criticisms of defendant's argument. All briefs are able and exhaustive, and it is realized that every effort has been made to help the court. It is perhaps natural, in a hotly contested case, that counsel, in their ardor, should assail their opponents upon every conceivable point, material or immaterial, and should spare no pains to advance the merits and equities of their cause, even to the extent of dwelling at length upon incidents or aspects less calculated to invoke careful judgment than to obscure clear thought by arousing prejudice or sympathy. It is equally natural that, where an issue may depend upon the exact mode of operation of devices not entirely simple, counsel and expert witnesses, endeavoring to sustain their theories harmonious with their contentions, should, at times, go so far afield in argument and speculation as to bewilder an effort to follow them.

With experts of standing in conflict, and able counsel contradicting one another upon almost every conceivable point, legal and mechanical, it results that, instead of presenting one or more clear-cut issues, the court is confronted with a veritable tangle of multiplied disputes. Therefore it becomes imperative to attack the problems presented as a matter of independent reasoning, and this I shall proceed to do.

. Searching the Lowman and French & Stephenson patents for what they teach on their face, examining the Heim patent for the same purpose or with the same end in view, the question here presented is: Do the differences between Heim and the others amount to patentable invention?

The original Heim patent, No. 1,210,937, was granted January 2, 1917, to plaintiff, assignee of the inventor. The patent stood as issued until September 8, 1920, when it was surrendered and the application filed which resulted in the granting of the reissue patent here involved. This delay has been found justifiable. But when, as here, the reissue patent was applied for after the commencement of litigation, evidently in a belated endeavor to differentiate its disclosure and claims from the prior art, or to remold it more nearly to suit the exigencies of litigation already under way, a court must be inclined to look first to the original patent for a fundamental understanding of the inventor's contribution to the art.

Turning, then, to the original Heim patent, the specification characterizes the invention as a "roll-grinding machine." There is no statement as to what sort of rolls is contemplated, and a fair interpretation of the drawings and specifications would admit of their covering any sort of metallic or hard roll adapted to any of the various uses to which such an article might be put. If the court is justified in draw-

ing mere inferences, there is an implication in the assignment of the patent to the plaintiff that the invention may be useful in making roller bearings, although its special application to such work is nowhere pointed out in the specification. Nor does the specification lay stress upon the degree of accuracy with which the machine is calculated to operate. It states (page 1, line 8) that the "invention has for its object the production of a novel method of grinding rolls and of a machine for carrying my novel method into effect," and that (line 31) "the essentials are a grinding wheel having a relatively high surface speed, a carrier for the rolls, * * * and a wheel moving in the opposite direction and having a relatively low surface speed, the action of which is to cause constant and uniform rotation of the rolls while being operated upon, at a much lower surface speed than the grinding wheel. This wheel I term the regulating wheel for the reason that it regulates the speed at which the rolls rotate while being operated upon."

One feature of the machine, not involved in this controversy, whereby more of the weight of the rolls is thrown upon the slow wheel than upon the rapid wheel, is mentioned in the specification as "an aid in securing perfect and uniform grinding of the rolls" and in preventing "scratching" and the "grinding of flats." And at the end of the specification the inventor recites that, because of the constant and uniform rotation of the rolls insured by the slow wheel, he is "enabled to produce * * * much more rapidly and economically than has heretofore been possible rolls of the very highest grade."

Beyond these general references as to the quality of the work done by the machine, there is nothing to indicate any particular degree of grinding accuracy attainable, nor to emphasize particular means in or utility of the machine for shaping rolls the diameter of which is required to be exact to the ten-thousandth of an inch (a measurement frequently mentioned in the testimony) or to any other precise dimension.

Studying the Heim disclosure as a matter of first impression, and without reference to the prior patented art, one cannot fail to regard it as embodying invention of a high order, involving skillful and useful application of various physical laws. Heim mounts two abrasive wheels face to face, so as to impinge a roll between their peripheral faces. Taking advantage of the phenomena of friction which result in greater traction between relatively slowly moving contacting bodies than between relatively swiftly moving bodies, he provides that one of these wheels shall have "a relatively low surface speed," while the other shall have "a relatively high surface speed." This results in the low speed wheel governing the rotation of the impinged roll, for the greater frictional hold of the slow wheel upon the roll resists and controls the less effective urge of the rapid wheel. What the slow wheel gains in grip or traction, it loses in grinding power, since, in order to grind or abrade, there must be relative scraping or sliding action, and the rapid wheel, too fast in its motion to overcome the tractive grip of the slow wheel on the roll, becomes the chief grinding element. Thus Heim terms the slow wheel "the regulating wheel, for the reason

that it regulates the speed at which the rolls rotate while being operated upon," and terms the rapid wheel the "grinding wheel," although both wheels are of similar abrasive material. (Plaintiff's Main Brief, p. 69.) Obviously the surface texture that would "grind" at high speed would "hold" at low speed.

It is equally clear, however, that while the slow wheel maintains the rotative control of the roll because of its superior tractive hold, still this action is somewhat affected by the rotation of the rapid wheel, which, were it not for the grip of the slow wheel, would certainly accelerate the roll's rotation. In other words, the slow wheel acts as a brake which permits only a certain speed of roll rotation. Without the slow wheel the rapid wheel would drive the roll, and drive it much faster. Again, the action of the slow wheel is not exclusively one of merely governing the roll's rotation. The contact line between the roll and the slow wheel is out of parallel with the radius of the wheel at that point; the roll is of substantially equal diameter from end to end, and contacts along its length with the face of the wheel in a nonchordal position, so that every point of contact between the wheel and the roll lies at a different distance from the wheel center. Consequently there is continual frictional movement between the roll and the slow wheel, as there is between the opposite side of the roll and the rapid wheel; but the relatively slow speed of one wheel results in an increased coefficient of friction in its favor, to the end that the slow wheel predominates in rotative effect upon the roll, while the rapid wheel predominates in abrasive effect.

The Heim patent leaves to the judgment of those skilled in the art what speeds of rotation may prove best, being nowhere more specific than to state that the low speed wheel is to rotate the rolls "at a much lower surface speed" than that of the rapid wheel. And clearly this effective speed relation might well be expected to vary in accordance with various factors; e. g., the nature of the grinding surfaces, the nature and form of the object being treated, etc. The teaching of the Heim patent is, then, that in a machine of the type disclosed the rotation of the roll and the grinding of its surface are functions of relative speed at points of operative contact; that relatively high speed results chiefly in abrasion, and relatively low speed chiefly in the government of rotation.

Besides rotating the roll at a governed rate and simultaneously abrading its surface, the co-operative action of the two wheels results in feeding the roll longitudinally across and past the operative surfaces of the wheels. Since the slow wheel has the superior tractive grip upon the roll, the slow wheel also controls this feeding movement. The mechanical causes of this feeding movement involve a number of phenomena not expounded in the Heim patent, but which are evident to one studying the Heim disclosure. A full discussion is not necessary here. Suffice it to say that, when the roll is in such position that the line of contact between it and the contiguous wheel face does not coincide with the wheel radius at that point, rotation of the wheel will result in urging the roll in a direction of its long axis. If the roll be so positioned that the moving radii first cut the inner extremity of

the line of contact, so that continued rotation moves the points of intersection in a direction away from the wheel center, then the roll is urged outwardly; and if the roll's position be such that the moving radii first cut the outer extremity of the line of contact between the roll and the wheel surface, then the longitudinal urge upon the roll is inward, towards the wheel center. Since the slow wheel and the rapid wheel turn in opposite directions, their longitudinal urges upon the roll between them are opposite; but the superior tractive hold of the slow wheel overmasters the tractive action of the rapid wheel, so that the slow wheel governs the longitudinal motion of the roll, as well as its rotation.

In the Heim patent the rotation of the slow wheel is upward at the point of contact between it and the roll. It is desired in the Heim machine that the rolls be fed inwardly toward the wheel centers (where a trough for their discharge is provided), and the roll carrier is so positioned that the contact line between the roll and the slow wheel lies above the center of the wheel; i. e., above the horizontal radius, and in such a position that any given radius line of the slow wheel will initially meet the roll at its outer end, thus transmitting to it an inward impulse. In this position the downwardly turning rapid wheel tends to impel the roll outwardly; but the upwardly turning slow wheel, having a superior tractive grip upon the roll, overcomes this effort of the rapid wheel, and causes the roll to be moved inwardly as desired. Heim says in his specification that:

"It is, of course, necessary that the top of the carrier should be placed slightly above a horizontal line intersecting the axial line of the wheels, and it is obvious that by raising the carrier the amount of grinding action to which each roll will be subjected will be lessened, as the rolls will be drawn forward more rapidly."

He is quite correct in his statement that these matters of adjustment are obvious. Having once discovered and demonstrated the roll-rotating and roll-feeding action of the two wheels, it is, of course, obvious that, by varying the relative angularity between the wheel radii and the roll and wheel contact line, the speed of rotation and roll feed cannot but be correspondingly modified. This angularity alteration can be obtained in the Heim machine either by raising or lowering the roll carrier bodily, or by tilting the carrier upon its pivot—either operation serving to vary the position of the roll toward a chordal position at one extreme or a radial position at the other.

It is obvious, as Heim indicates, that the nearer the roll approaches a chordal position as to the wheels the more rapidly it is longitudinally fed; conversely, the nearer it lies to a radial position the more slowly it is fed longitudinally and the more it is ground. Consequently Heim has provided a roll carrier that may be adjusted to suit the mechanical requirements of the work in hand. He says:

"As the conditions in grinding different rolls will vary, it is impossible to arbitrarily determine any fixed height for the standard or inclination of the carrier that will produce the best results. * * *"

This analysis of the Heim invention is sufficient to confirm the statement in Heim's specification that, of this machine, "the essentials are

a grinding wheel having a relatively high surface speed, a carrier for the rolls to be operated upon and a wheel moving in the opposite direction and having a relatively low surface speed, * * *" and that "it is obvious" that, by raising or lowering the carrier, the speed of the rolls longitudinally and the amount of grinding to which they are subjected may be inversely varied.

On June 10, 1905, there issued British patent No. 12,190 to Lowman, disclosing a machine for grinding and polishing corks. While corks are dissimilar to steel roller bearings, still the Heim patent places no limitation (unless by post litem modifications inserted in the reissue patent) upon the sort of rolls to be operated upon, and a cork is a "roll," at least in physical shape. Lowman provides a grinding disc quite analogous to Heim's grinding wheel 10. Plaintiff strenuously contends that the Lowman machine is but a polisher, and that there is a fundamental difference between grinding and merely polishing. But this distinction, per se, seems trivial and ill-founded, especially as Lowman's specification refers to the surface of the cork-treating disc as a "grinding and abrading surface" and refers to the disc itself as a "grinding disc."

Lowman also provides a carrier 8 (L, Fig. 3) analogous in function to Heim's roll carrier 12 (H, Fig. 4), which supports and guides the corks as they pass and are ground by the upbrading disc, while opposite the abrading disc Lowman positions a roller or drum 11 (L, Figs. 1 and 2), which his specification characterizes as a "controlling device" having functions similar to those of Heim's "regulating wheel" (H, Figs. 5 and 6), and which, as in the Heim machine, is rotated in the direction opposite to that of the abrading disc and at a very much lower speed. (Lowman specification, p. 5, line 40 et seq.)

As in Heim's machine, the downwardly turning grinding wheel results in the rolls being "held down on the carrier" (H, Spec. p. 3, line 21), so Lowman's grinding disc operates in a downward direction, so "as to tend to force the corks onto the ledge" or carrier. In both machines the regulating wheel turns upwardly. Lowman says that "the speed of rotation of the corks" is "regulated by the speed of rotation of the controlling device," just as in Heim's specification we see that "the regulating wheel * * * regulates the speed at which the rolls rotate. * * *"

Lowman provides that his "cork-controlling device 11 can be adjusted towards or away from the disc, * * * so as to suit different sizes of corks. * * *" (L, Spec. p. 5, line 36 et seq.), just as Heim provides that "the distance between the operative wheels may be regulated to provide for the grinding of different sized rolls by longitudinal adjustment. * * *" (H, Spec. p. 2, line 53 et seq.) Lowman even provides for adjusting the inclination of the cork carrier by pivoting it through the bracket 9 to upright 10 (L, Fig. 3), just as Heim provides for adjusting the angle of inclination of his carrier 12 (H, Fig. 4). And the Lowman United States patent even shows means for adjusting the carrier laterally.

Clearly, then, in view of Lowman, it was not new for Heim to provide a machine comprising a grinding member rotating downwardly

at a relatively high speed, opposed by a regulating member rotating upwardly at a relatively low speed, between which members was positioned an angularly and laterally adjustable carrier, whereon a series of cylindrical objects was supported and guided between and past the rotating surfaces. Nor was it a new discovery with Heim that such rolls, or cylindrical objects, when in longitudinal contact with the face of a revolving disc and out of parallel with the radii of the disc, will be longitudinally fed as well as ground. Lowman points out in his specification (page 4, line 33 et seq.):

"As soon as each cork in turn has been brought under the action of the * * * grinding disc * * * by reason of the said ledge (the cork carrier) being below the axis of rotation of the said grinding disc, the tendency of the latter will be to force said corks to travel along the ledge towards the central part of the disc. * * *"

Nor was it new for Heim to provide, in such a mechanism, that the slowly moving regulating member should control the rotation of the cylinders or rolls, for Lowman points out that his slowly turning drum or "controlling device" serves "to control * * * the corks. * * * to cause or permit * * * the grinding disc to effect the desired amount of grinding. * * *" (*L*, Spec. p. 3, line 47 et seq.), and "will tend to rotate each cork on the ledge round its own axis * * * and thus the periphery of each cork is presented to the action of the grinding disc; * * * the speed of rotation of the corks being regulated by the speed of rotation of the controlling device." (Spec. p. 4, line 15 et seq.)

The Heim patent enumerates the essentials of the Heim device, for at page 1 of the specifications, line 31 et seq., he says:

"The essentials are a grinding wheel having a relatively high surface speed, a carrier for the rolls to be operated upon, and a wheel moving in the opposite direction and having a relatively low surface speed, the action of which is to cause constant and uniform rotation of the rolls while being operated upon, at a much lower surface speed than the grinding wheel. This wheel I term the regulating wheel for the reason that it regulates the speed at which the rolls rotate while being operated upon."

Considering, therefore, a cork to be a "roll," as in form it certainly is, it is evident that Lowman anticipates, in terms, every element of the Heim machine that was deemed and stated in the Heim specification to be essential. While Lowman clearly deprives Heim of any broad pioneership in the grinding of cylinders or rolls, using those terms generically, still there are obvious differences between the Heim machine and the Lowman machine. A machine organized precisely as disclosed by Lowman would not be suitable for grinding metallic rolls. It is unnecessary to speculate upon whether it could have been so modified as to be capable of grinding metal objects, without the exercise of the inventive faculty. Again, while Lowman suggests the use of a disc as a work-controlling device instead of his drum, he does not show any such disc; and further—perhaps most important—in the Lowman machine it is the grinding wheel that feeds the work longitudinally, and not the regulating or controlling wheel, a fact which plaintiff protests would militate against accurate and successful roll

291 F.—29

grinding, at least in the making of steel roller bearings. These differences, and some others more minute, sufficiently distinguish Lowman from Heim to make it at least likely that so far as concerns the Lowman patents alone there may be patentable invention beyond their disclosure in what Heim did; and any doubt in this regard should properly be solved in favor of Heim.

[1] But when one turns to the French & Stephenson patent, and assumes, as one must assume, that both French & Stephenson and Lowman were before Heim when he designed his machine, it becomes impossible to accredit Heim with anything more than the mere mechanical adaptation of what had already been invented or discovered. Courts should lean toward the presumption that an issued patent expresses invention, and should favor the affirmative in a doubtful case of invention or no invention. But no duty rests upon a tribunal to transpose mechanical intelligence into genius, and so promote the levy of tribute for trifles, and award to the natural progress of an art the prize intended for those greater advances due to true invention.

The French & Stephenson disclosure is so similar to that of Heim that it fosters a moment of confusion between them. Compare Fig. 2 of Heim with Fig. 1 of French & Stephenson. The resemblance is striking. In both, there are the two abrasive discs face to face; in both these discs are set at an angle; in both the operative surfaces of the discs are beveled (see French & Stephenson, Fig. 4, and Heim, Fig. 7) to provide space between other portions of the discs while maintaining parallel working surfaces at the desired point; in both there is a rapid grinding disc, opposed by a relatively slowly turning disc; in both the rapid disc operates downwardly upon the work, while the slower disc operates upwardly; in both provision is made for relative angular adjustment, disc to disc; in both the distance between the discs may be varied by longitudinal adjustment; in both this adjustment may be regulated and nicely fixed by means of a hand wheel, which operates a screw at the right hand end of the machine; in both the machine is designed to operate upon and shape a cylindrical object, and in the case of French & Stephenson this is specified as a steel rod, a fact which eliminates any contention that the French & Stephenson machine pertains to a different art from Heim's machine; in both the roller or cylinder to be worked upon is rotated, ground, and fed longitudinally through the machine, by being positioned so that the lines of contact between it and the operating wheel surfaces are at an angle to the radii of the wheels; in both there is a work carrier which extends between the discs to support and guide the work being rotated and fed upon and along it; there is even identity of shape in this guide or support, it appearing both in Heim and in French & Stephenson as a substantially rectilinear flat-topped bar. Compare Heim, Fig. 6, with French & Stephenson, Fig. 5.

The similarity between the Heim disclosure and that of French & Stephenson is so marked as to suggest the question of how Heim could have designed his machine or prepared his patent drawings without the French & Stephenson patent before him. In both machines the opposed discs are of abrasive material, and it is the slow disc that

governs the rotation of the work and its longitudinal feeding through the machine. This is made clear by reference to the French & Stephenson drawings, which show the roll, or rod, *a*, being rotated in the direction of its arrow (see French & Stephenson, Fig. 1) by the upward movement of the slow disc *1*, and fed longitudinally in the direction of the arrow in Fig. 3 (i. e., from left to right in Fig. 3), and from the top towards the bottom of Fig. 1.

Indeed, the Heim specification, recognizing the phenomena of superior coefficients of friction between relatively slowly moving bodies compared to those between relatively rapidly moving bodies, demonstrates that such would be the action of the French & Stephenson machine, even if the drawings and specification of French & Stephenson did not so fully set it forth; and the endeavors of expert witnesses to disqualify the French & Stephenson machine by measuring the diameters of pulleys, as shown in the patent drawings, to prove insufficient speed difference, is futile, even if patent drawings were required to be drawn to scale, for the driving pulleys are not shown, and the relative speeds of the driven discs cannot be known, without knowing the dimensions of the driving as well as the driven pulleys. On this matter of relative speeds French & Stephenson are as explicit as Heim, setting forth the necessity of different speeds, and leaving it to those skilled in the art to determine the most advantageous ratios in accordance with varying conditions.

Plaintiff lays great emphasis upon the ability of the Heim machine to grind with accuracy, as a differentiation from the Lowman disclosures. While the Heim patent does not lay stress upon this point, the French & Stephenson patent does, describing their invention as adapted to bring the rod or bar worked upon "to an exact predetermined size throughout its length" (French & Stephenson, Spec. p. 1, line 37 et seq.), this size to be determined (as in Heim) through the medium of an adjusting screw adapted to be operated by hand and producing "proper adjustment of the disc *2* relatively to the disc *1*" (French & Stephenson, Spec. p. 2, line 90 et seq.). Plaintiff offered certain testimony by Heim himself calculated to show the relative inability of the French & Stephenson machine to perform highly accurate work. But the evidence is unconvincing and unsatisfactory, especially as the witness is naturally exceedingly interested in demonstrating the French & Stephenson machine in an unfavorable light.

Plaintiff, endeavoring to differentiate the Heim machine from the French & Stephenson disclosure, points out that (as shown in French & Stephenson, Fig. 1) the circumferential margins of the operating portions of the two discs are not exactly opposite, and shows that, if short rolls were fed into the French & Stephenson machine, they would often contact, under certain conditions, with the inner periphery of the slowly moving disc before contacting with the corresponding surface of the rapid disc, and so be thrown out of position. But this is a mere matter of adjustment, fully provided for in the French & Stephenson specification. French & Stephenson show the shaft *5* pivotally adjustable horizontally so that the operative edges of the two discs can

be readily brought into alignment, if desired. This is exhaustively set forth in their specification on page 2, line 37 et seq., as follows:

"The meeting faces of the * * * discs * * * are slightly convexed * * * and * * * are adjusted so that * * * the meeting faces * * * are substantially parallel and spaced a distance apart corresponding to the diameter to which the rod or bar is to be ground, * * * and it therefore follows that the horizontal angle of the intersection of the axes of the shafts * * * depends upon the degee of convexity * * * of the meeting faces of the discs when the * * * meeting faces are parallel. * * *"

So, as it seems to me, Heim simply does what the French & Stephenson patent teaches him. Desiring the meeting faces of his discs to be in horizontal alignment for treating short rolls, instead of long rolls, he makes the degree of convexity of the discs such as to suit this mechanical requirement. Indeed, the French & Stephenson specification suggests still another method whereby alignment of the margins of disc surface may be attained, viz. by making the rapid disc 2 smaller than the disc 1; as the French & Stephenson specification says, on page 2, line 5, "these discs * * * are * * * not necessarily of the same diameter." Clearly, therefore, merely reducing the diameter of the French & Stephenson disc 2 and providing it with a conical operating surface of width equal to that of disc 1, would obviate the difficulty emphasized by plaintiff, even without changing the degree of disc convexity, and without adjusting the horizontal angle of the shafts.

The one noteworthy difference between Heim and French & Stephenson is that Heim operates upon short rods, or rolls, while the French & Stephenson machine is designed to operate upon long ones. There is no disparity between them as to the mode of operation, nor as to the means whereby the grinding and feeding of the rods or rolls is accomplished. True, since Heim's grinding is done slightly above the horizontal axes of the discs, with the carrier slightly inclined, the work is fed from circumference to center; while in French & Stephenson, operating below the horizontal axes with the carrier approximately level, the feeding is from center to circumference. No important advantage is pointed out in this difference, and if there were any advantage it has been obtained by a mere change of position, attended by results that would have been evident in advance to a skilled mechanic.

French & Stephenson do not show the rod carrier as adjustable; but, as Heim says in his specification, referring to the adjustment of the position of the carrier, "it is obvious that by raising the carrier the amount of grinding action * * * will be lessened, as the rolls will be drawn forward more rapidly;" this variation between feeding and grinding being the sole desideratum of this adjustment. In any event, such adjustment is shown in the Lowman patents.

[2] Therefore, in view of the Lowman and French & Stephenson patents, I am unable to see what is left to Heim beyond mere matters of adjustment, details which should have been obvious in purpose and effect to a mechanic skilled in this art. It is, of course, true that minute changes in the organization, or even merely in the arrangement, of a machine may, upon occasion, amount to true invention. But that occasion must be one where such change results, not only in a marked

improvement, but in an improvement that is not an obvious result which one skilled in the art would have foreseen. The adjustment and positioning of parts in the Heim machine, in so far as they differ from the prior art structure (if they do so differ), produce only those results that one skilled in the art would immediately foresee in view of the French & Stephenson and Lowman patents. It was obvious, as one gathers from the witnesses, that rolls of different dimensions might require varying rates of feeding and grinding. It was obvious, as Heim stated in his specification, that changing the position of a roll relatively to the disc surfaces would result in corresponding alterations in rate of speed and amount of grinding. Consequently, it was not invention, even if it had been novel, to combine to this end an old machine and old adjusting means, which is, as I view it, all that Heim did, beyond some slight modifications in the form and location of parts; and, if such be the fact, then it is immaterial what may be the form or wording of the claims which made their way to allowance in the Heim reissue patent.

The manifold excellencies accredited to the Heim machine as actually operated, marshaled at length and by no means minimized by counsel and experts, appear upon careful study and in view of the statements of the witnesses to be attributes of elements and operations common both to Heim and the prior art, and not of the alleged differences between Heim and his predecessors.

The only error of inadvertence that I am able to discover in the opinion previously rendered (280 Fed. 415) is a dictum to the effect that certain claims of the reissue patent, not infringed, were valid; other than this, I am unable to reach a conclusion different from that expressed in the previous opinion. There may be a decree for defendant in accordance with the opinion previously filed and this memorandum of decision on rehearing; and it is so ordered.