## HEIM GRINDER CO. v. FAFNIR BEARING CO.

(District Court, D. Connecticut. May 17, 1926.)

No. 1747.

**1. Patents ⚙⇒37.**

If a claim covers a true combination, the novelty of the elements, severally, is a moot question.

**2. Patents ⚙⇒328.**

15,035 (Heim reissue), for roll grinding machines, *held* valid, as against the defense of prior use; also infringed.

**3. Patents ⚙⇒81.**

Something far transcending probabilities is demanded to invalidate a patent on the defense of prior use.

**4. Patents ⚙⇒240.**

Infringement is not avoided by improving or adding to the machine of the patent.

**5. Patents ⚙⇒328—1,281,366 (Heim), for improvement in roll grinding machine, held valid and infringed.**

The Heim patent, No. 1,281,366, for method of utilizing gravity to urge the work toward the regulating wheel in a roll grinding machine, *held* valid and infringed.

In Equity. Suit by the Heim Grinder Company against the Fafnir Bearing Company. Decree for complainant.

Livingston Gifford, Robert S. Blair, William T. Knieszner, and Rufus B. Short, all of New York City, and Delos G. Haynes, of St. Louis, Mo., for plaintiff.

Frederick P. Fish, J. Lewis Stackpole, and Hector M. Holmes, all of Boston, Mass., for defendant.

THOMAS, District Judge. Predicated upon alleged infringement of two patents issued to Lewis R. Heim, the plaintiff brings this bill in equity for an injunction and an accounting. The first patent is reissue No. 15,035, reissued January 25, 1921, and the

second is original patent No. 1,281,366, granted October 15, 1918. The reissue patent was before this court in Ball & Roller Bearing Co. v. F. C. Sanford Manufacturing Co., and is reported in 280 F. 415, and in 291 F. 442, and upon appeal was held valid by the Circuit Court of Appeals in 297 F. 163, as to all of the claims, except claim 3, which was not involved in that litigation, but which is in issue here. The Circuit Court of Appeals also held all claims infringed by the Sanford machine.

The defenses to this action are invalidity and noninfringement, and particular stress is laid upon the former.

The invention of the reissue patent relates to "roll grinding machines," and more specifically to machines for grinding rolls with which roller bearings are manufactured for use in motor cars and for other purposes, in very large quantities, rapidly, accurately, and at a minimum cost, all of which characteristics are to-day vitally essential to a successful manufacture. An outstanding feature of the invention is the provision of a three-part combination of (1) a grinding wheel; (2) a support to hold the work while the same is being ground; and (3) what is called a regulating wheel. The latter is a member with a "holding" surface rotating away from the support at very low speed, at the same time dominating the rotation of the work with which it contacts. By a variable component of its thrust on the work, the latter may be fed endwise along the support; but its main duty or function is to seize upon and steadily rotate the work while the grinding wheel is devoted solely to the business of grinding. Other features are present, but, as will later appear, a discussion of them is unnecessary.

The other patent in suit, No. 1,281,366, issued October 15, 1918, is a division of the original application for a patent for a roll grinding machine upon which patent No. 1,210,937 was granted on January 2, 1917. It deals with the method or art of utilizing gravity to urge the work toward the regulating wheel, whereby an added gain in steadiness of rotation is attained.

The commercial achievements of these inventions, particularly in recent years, due to the increased output of motor cars, as appears from the undisputed testimony, show that a truly remarkable measure of success has attended their practical use.

The nominal defendant is the Fafnir Bearing Company, having its principal place of business in the city of New Britain, in this district. The record shows, however, that the defense of this case has been conducted by the Detroit Machine Tool Company, of Detroit, Mich., which manufactures the machines used by the Fafnir Company.

[1] No prior patents are relied on which were not before the court in the Sanford suit, with the exception of British patent to Edwards, No. 1,292 of 1885. This patent seems to have no especial pertinence. In fact, defendant has apparently introduced this and the other patents as evidence of the antiquity of certain elements of the Heim combinations, aiming thereby to remedy such deficiencies as may exist in the defense on which it more particularly relies. To such practice, assent cannot be given. When, as in the present case, the component ideas which make up a complete invention are sufficiently cohesive to form true combination claims, their novelty, as isolated elements, is a moot question.

Our own Circuit Court of Appeals, speaking through Judge Hand in H. Ward Leonard, Inc., v. Maxwell Motor Sales Corp., 252 F. 584, at page 593, 164 C. C. A. 500, 509, said:

"The specification of a mechanical combination patent generally discloses a machine consisting of a large number of elements, most of them individually old in the art. The invention consists in the act of selecting some of these elements for a combination which constitutes an independent entity, serviceable to the art, and theretofore unknown. It is always this choice of the proper elements in combination which constitutes the invention."

[2] None of the patents in evidence discloses features which, even if taken from their environment, can be fairly injected into or superposed on other instances of the prior art. The defense of invalidity in this case must stand or fall upon the so-called Hyatt Company and Crucible Steel Company uses.

Both parties agree that, for a considerable period of time prior to the date of the Heim invention, in June, 1913, there was in use at the plant of the Hyatt Roller Bearing Company a number of machines which ground rolls by passing them in a covered chute between two abrasive wheels about 18 inches in diameter, and that a large number of rolls were thus ground. Here agreement between the parties ends, unless we add that the speed of the slower wheel, asserted by plaintiff's witnesses to be 90 to 110 R. P. M., finds indorsement in the testimony of defendant's witness Knoth that this speed extended up to 100 R. P. M.

Defendant contends that the wheels ran

in opposite directions—that one was beveled, and its axis swung out of alignment with that of its mate, and that the slower wheel, moving upwardly at the work, regulated its rotation and feed in accordance with the principles of the Heim invention. On the other hand, the plaintiff contends that the wheels both turned in the same direction—that they were parallel, and that both ground on their flat annular surfaces at each side of their centers; the rolls being fed by their weight down a steep chute.

Defendant's proofs, unsupported as they are by tangible evidence, are not impressive. Under the conditions which we have here, the standard of oral testimony must be high indeed to fit it to bear the heavy burden of proof properly imposed on the defendant. It is sufficient to state that these proofs fall short of attaining the standard required by law, as set forth in the decision of the Supreme Court of the United States in Eibel Process Co. v. Paper Co., 261 U. S. 45, at page 60, 43 S. Ct. 322, 327 (67 L. Ed. 523), where Chief Justice Taft, speaking for the court, said:

"The oral evidence on this point falls far short of being enough to overcome the presumption of novelty from the granting of the patent. The temptation to remember in such cases and the case with which honest witnesses can convince themselves after many years of having had a conception at the basis of a valuable patent, are well known in this branch of law, and have properly led to a rule that evidence to prove prior discovery must be clear and satisfactory. Barbed Wire Patent Case [Washburn & Moen Mfg. Co. v. Wiler] 143 U. S. 275, 284 [12 S. Ct. 450, 36 L. Ed. 161]; [Webster] Loom Co. v. Higgins, 105 U. S. 580, 591 [26 L. Ed. 1177]."

It becomes unnecessary, therefore, to analyze the testimony adduced by the plaintiff, although it should be noted that it was straightforward and persuasive, and satisfied me that the plaintiff's contention accords with the facts. To all of this the defendant replies that even plaintiff's witnesses admit that, if both wheels be run in the same direction, flats will be ground on the rolls. The testimony to which defendant refers, and which has been imported from the earlier suit, is of doubtful pertinence to a machine which was admitted by defendant's witness Knoth to ruin half of the work passed through it. Defendant's witness Shirley implies that the Hyatt Company was compelled to do something to lessen the enormous irregularities of their unground rolls.

It was under this stress that a crudity and wastefulness of manufacture was endured which would appear remarkable under ordinary conditions.

The above testimony of the plaintiff's witnesses cannot be held to deny operativeness of this sort. If there was any question, it would be set at rest by the fact that the original Shirley patent shows the wheels running in the same direction at the work, and also by the fact that it was admittedly so used for an indefinite time, with such satisfaction to its users that a patent application, thus showing it, was immediately filed.

The defendant's next patent, No. 1,312,-881, issued to Weiss and Knoth on August 12, 1919, applied for some years after the use on which defendant relies, describes the same direction of drive, and defendant's witness Holmes admits that, even at that time, some, at least, of the machines were so driven; and the so-called Western Clock machine had the same characteristic. The surface speed of the slow wheel, furthermore, was apparently so high that this element lacked the characteristic governing and controlling action of a regulating wheel.

The tests of the defendant at the trial cannot be overlooked. There a machine constructed by defendant to reproduce this Hyatt grinder as described by its witnesses, and, as plaintiff contends, certainly not deviating from their story by anything unfavorable to defendant, failed to demonstrate the presence of the Heim invention, and contrasted sharply with plaintiff's exhibition, at the trial, of the performance of one of the old Heim machines. If this machine of the defendant was capable of showing the combined action of a true regulating wheel, controlling unconfined rolls, and a grinding wheel, by whose sole action rolls were transformed from an unground to a ground condition, it is strange that neither action was demonstrated.

Passing now to the Crucible Steel Company or French & Stephenson use, defendant's contention is, in a general sense, weak in the same particulars as in the defense just considered. It is true that here we have a closer approach to something tangible in defendant's blueprint exhibit as evidence of the construction of the machine; but, the accuracy of construction being granted, we have nothing differing in substance from the French & Stephenson patent, the priority of which was unquestioned in the earlier suit. To earn relevance to the broader features of the Heim invention, this machine must have been driven at such wheel speeds as to gain,

if possible, the latter's distinctive features of action. This furthermore, must be shown to have antedated Heim. On both points defendant's proofs fail. On the latter, defendant's argument appears to be that at various times, in recent years, at least, the respective speeds were 1,100 R. P. M. and 160 R. P. M. and that the witnesses know of no speed changes.

Obviously this is not strict proof of speeds prior to Heim, particularly as defendant admits trying higher speeds in 1915 and as late as 1923. When the deficiencies of these proofs are coupled with the testimony adduced on behalf of the plaintiff, the clear preponderance of evidence is to the effect that prior to Heim there was no such disparity between wheel speeds as 1,100 R. P. M. and 160 R. P. M. Furthermore, the testimony of Ryan, whose evidence was first offered to the defendant, is that the speeds at first were 1,500 R. P. M. and 750 R. P. M., respectively. That being so, and it is not denied, defendant's proofs are predicated upon an intervening change or changes to 160 R. P. M., and such change must be shown to have been completed prior to Heim. The only attempt made to that end is the negative testimony to the effect that certain witnesses knew of no change at any time, which kind of testimony is of no probative force.

The failure of the defendant to show the embodiment of the Heim invention in the Crucible machine, even at the speeds which it alleges were used, is even more complete than its failure to show that such speeds were warranted. At the trial defendant demonstrated a machine with wheels driven at speeds to accord substantially with the testimony of its witnesses, and with a construction which, for roll grinding, at least, lacked even that justification. Thus built and thus driven and operated by defendant's witnesses, the machine, far from tending to perfect anything put into it, virtually ruined every roll it attempted to grind. There was, moreover, a very apparent lack of the characteristic steady and regulated behavior of the work, such as was shown by the plaintiff in the Heim machine. The reports of ex parte tests by defendant's expert, offered to show similarity of action in the Heim and Crucible Steel Company machines, are necessarily overshadowed by the widely different actions and results of these machines openly demonstrated at the trial by the respective parties.

The attacks upon the testimony of the witness Heim on the Crucible Steel wheel speed are unjustified. He is corroborated by Roth and contradicted only by Pardee, who, however, admitted that, even at a later date, he was experimenting with higher speeds. Hayes testified merely that the machine "operated" as usual. This is a frail support for a charge of false swearing against witnesses who gave their testimony in open court and apparently stated the facts to the best of their recollection.

[3] Defendant has suggested that the probabilities should be accorded determinative weight in passing on its prior use defenses. Something far transcending probabilities is demanded to invalidate a patent upon a defense of this nature. However, the use even of this criterion cannot advance defendant's cause. It is true that it seems not unlikely that the Hyatt Company might experiment with opposite directions of rotation; but, unless a regulating wheel was present, such effort would, at the most, duplicate the Crucible Steel Company's machine. Obviousness does not necessarily attend simplicity. In Keystone Manufacturing Co. v. Adams, 151 U. S. 139, 14 S. Ct. 295, 38 L. Ed. 103, a patent which concerned simply the reversal of·rotation of one of the parts of the machine was sustained.

As for probabilities in the case at bar: Both prior machines were abandoned, one for an admittedly irrelevant machine, and the other for the machine of the patent in suit; the use of both was without effect on general practice, and the use of neither, acting as defendant contends, was of sufficient value to the users to merit a patent. In sharp contrast the sweeping commercial advance of the Heim invention is doubly significant. These facts and others above noted point the probabilities against the line of defendant's argument.

The text of the defendant's case appears to be that the facts before the court in the first litigation were warped, suppressed, and even falsified, and that the record in the case at bar shows that the premises of the decision of the Circuit Court of Appeals were unsound. Notwithstanding the admission of its expert that he cannot state whether there is any real difference between slow wheel speeds of 160 R. P. M. and 600 R. P. M., defendant contends that the Circuit Court of Appeals was vitally misled in assuming the latter, instead of the former, rate of speed. To none of these arguments can assent be given. On the contrary, this record buttresses the outstanding points of that decision and has cast light, strong light, on certain basic principles of the Heim invention,

which were not defined with clarity to this court in the earlier suit. A substantial structural sameness in machines usually betokens a like degree of identity in the thought therein embodied. The record in this case affords a clearness of definition and contrast of inventive ideas which was not before this court in the Sanford Case.

In the foregoing discussion the invention in suit is taken as the broad Heim combination of a grinding wheel, a regulating wheel, and an interposed carrier, and it is against this combination that defendant's attack is leveled. Although additional features, such as the invention of the process patent in suit, the endwise feed of the work, and the variation of the latter, apparently involve patentable advances beyond the broad invention, it is unnecessary to dwell upon them, for, if the broad invention be novel, then a fortiori this invention plus the additional features is not anticipated.

[4] The question of infringement requires no lengthy discussion. If the Heim invention be made use of by the defendant, it matters not that defendant may have added to it, or improved it. By way of missing elements of the Heim combinations in its machines, defendant names only the carrier or work support. We are told that by the transposition of the Heim machine, and throwing the weight of the work entirely, instead of partially, on the regulating wheel, the latter becomes both carrier and regulating wheel, and the former, in so far as the Heim invention is concerned, ceases to exist. Obviously something far more sound and simple than such a theory is required to exonerate one who has bodily taken a meritorious invention.

[5] Both patents in suit are valid, and all claims thereof are infringed. There may be a decree for the plaintiff, with costs to abide the event; and it is so ordered.