# KEYSTONE MANUFACTURING COMPANY *v.* ADAMS.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 156. Argued December 8, 11, 1893. — Decided January 8, 1894.

The invention patented to Henry A. Adams by letters patent No. 132,123, dated October 15, 1872, for a new and useful improvement in corn-shellers, is a substantial and meritorious one, well worthy of a patent, and is infringed by machines manufactured under sundry letters patent granted to Harvey Packer.

When, in a class of machines widely used, it is made to appear that, after repeated and futile attempts, a machine has been contrived which accomplishes the result desired, and a patent is granted to the inventor, the courts will not adopt a narrow construction, fatal to the grant.

While it is undoubtedly established law that complainants in patent cases may give evidence tending to show the profits realized by defendants from use of the patented devices, and thus enable the courts to assess the amounts which the complainants are entitled to recover, yet it is also true that great difficulty has always been found, in the adjudicated cases, in applying the rule that the profits of the defendant afford a standard whereby to estimate the amount which the plaintiff is entitled to recover, and in defining the extent and limitations to which this rule is admittedly subject.

Such a measure of damages is of comparatively easy application where the entire machine used or sold is the result of the plaintiff's invention; but when, as in the present case, the patented invention is but one feature in a machine embracing other devices that contribute to the profits made by the defendant, serious difficulties arise.

The record shows that the complainant did not seek to recover a license fee, nor did he offer any evidence from which his damages could be computed. He relied entirely on the proposition that the amount which he was entitled to recover could be based on the profits realized by the defendant from the sale of the patented invention, and the amount of such profits he claimed to have shown by evidence tending to show what certain third companies were alleged to have made from the sale of similar devices in similar cornshelling machines. *Held*, that he could recover only nominal damages.

On the 14th day of May, 1886, Henry A. Adams filed in the Circuit Court of the United States for the Northern District of Illinois a bill of complaint against the Keystone

Manufacturing Company, a corporation of the State of Illinois, and Thomas A. Galt, J. B. Patterson, George S. Tracy, and E. L. Galt, officers and managers of the said company, complaining that the defendants were infringing his rights as the patentee and owner of letters patent No. 132,128, granted on October 15, 1872, by the United States to him as the original and first inventor of a certain new and useful improvement in cornshellers. The bill contains the usual averments and prayed for an account and an injunction. On August 2, 1886, the defendants filed a joint answer, admitting that letters patent had been issued to the complainant, as alleged, denying that said patent described any new or patentable invention, alleging that the said alleged invention had been anticipated in numerous other specified letters patent, and denying that the machines made and sold by the defendant company were infringements of any rights possessed by the complainant.

A replication was duly filed, evidence was taken, and argument had, the result of which was that, on June 30, 1888, the court entered an interlocutory decree sustaining the validity of the patent, finding an infringement, directing an account, and appointing a master to state the same. Afterwards, on June 21, 1889, the master filed a report awarding the sum of $27,620 to the complainant, being the amount of the profits he found to have accrued to the defendants from their use of the patented machines, to which report exceptions were filed. On February 5, 1890, a final decree was entered overruling the exceptions to the master's report, decreeing the payment by the defendant company of the sum of $27,620 and costs, and dismissing the bill for want of equity as against Thomas A. Galt, J. B. Patterson, George S. Tracy, and E. L. Galt.

From this decree an appeal was taken to this court.

Mr. *John G. Manahan*, for appellant, on the question of damages said:

It is established that there was positive testimony taken before the master which the master considered to be direct

and sufficient under the circumstances, to prove that the appellant made at least the amount of profit, in manufacturing and selling its machines, that was proven to be made by the other manufacturers in the same locality on the same kind of machines, and the master was warranted in finding in dollars and cents that as the amount of profit; and the court below decided that the master's report was correct, upon full consideration of the very points upon which the question is presented to this court.

The proofs in this case as to profits and damages bring the case clearly within all the decisions of this court upon that point. The doctrine laid down in *Illinois Central Railroad* v. *Turrill*, 94 U. S. 695, was that, where the defendants infringe complainant's patent by the use of a machine in repairing railroad rails, they are responsible for the advantages derived from the patented device over the use of other devices for doing such work. The advantage derived by the defendant by using the II. A. Adams device in their machine was at least the amount proven by the testimony taken before the master.

In *Mowry* v. *Whitney*, 14 Wall. 620, 651, it was held that the question to be determined in regard to profits is: "What advantage did the defendant derive from using the complainant's invention over what he had in using other processes then open to the public, and adequate to enable him to obtain an equally beneficial result? The fruits of that advantage are his profits."

The evidence in this case is that the defendant's machine was benefited to such an extent that it was able to derive a profit equal to the amount found by the master by making and selling the machines containing II. A. Adams's invention.

The doctrine laid down in *Dobson* v. *Hartford Carpet Co.*, 114 U. S. 439, *Tilghman* v. *Proctor*, 125 U. S. 136, and other cases, is not controverted in any way by the findings in the case at bar. In the case at bar it was recognized by the court below that the burden of proof as to profits and damages rested with the complainant, and it is contended on behalf of the appellee that the complainant did prove in dollars and cents the amount

of profit which the manufacturers of these machines made in the locality where the appellant manufactured and sold machines. This proof was made in dollars and cents in specific amounts, and the number of machines made by appellant was proven and admitted by appellant. The master so found, the court so found, and the testimony fully bears out these findings. The appellee also proceeded to apportion the profit of manufacturing and selling these machines among the various improvements which were used in the machine, dividing the total profit into four parts, assigning one part to the invention of H. A. Adams, thereby conforming to the decision of this court in *Garretson*, v. *Clark*, 111 U. S. 120.

. *Mr. Lewis L. Coburn* and *Mr. John M. Thacher* for appellee.

Mr. Justice Shiras, after stating the case, delivered the opinion of the court.

Prior to the invention patented in 1872 by Henry A. Adams, a well-known defect in cornshellers consisted in the clogging or choking of the chute through which the ears of corn descended to the sheller. As the ears would approach the throat of the machine, they were liable to stop and wedge against each other. This sometimes necessitated the stopping of the machine in order to break the clog in the feed or chute, and usually the services of an attendant were required to clear the chute and break the clog by punching the ears with a stick.

The object of the Adams invention was to remedy this defect, and the device invented is described in the first claim of the patent in the following terms: " The combination with a cornsheller of a series of wings, wheels, or projections, so arranged on a shaft as to revolve in the same direction which the corn is running, and so placed relative to the throat as to force into the machine all misplaced or hesitating ears, substantially as specified." Resorting to the specification, we find the following description of the invention: ·

" This invention relates to an improvement upon the corn-sheller patented by Augustus Adams, as described in his letters patent No. 54,659, dated May 15, 1866. In said patented corn-sheller a winged shaft is placed above the openings into the sheller, and is revolved oppositely to the direction of the entering corn, in such a manner that the said wings strike the upper ear, if two ears attempt to enter the throat at once, and throw said upper ear back into position to descend properly; but I have discovered that the ear so thrown back retards the feed, inasmuch as the following ears are likely to override the ear so thrown back, and the difficulty is thus continued.

" In the present invention I propose to overcome this objection by forcing all the ears, as they approach the throat, to pass rapidly out of the way into the sheller; and to this end I arrange a shaft above the throat, with a series of wings, wheels, or projections, to revolve in the same direction as the entering corn, so as to force the corn rapidly forward into the sheller, which is capable of shelling all the corn that can be forced through the throat. By this means I avoid any chance of clogging the feed under ordinary circumstances."

That the patented device is useful and successfully overcomes the choking or clogging that interfered with the operation of cornshellers as previously constructed, is clearly made out in the case. The evidence is positive as to this point, and also to the effect that the application of the invention dispensed with the extra attendant, whose duty it was to remove the clog by using a stick or fork, and increased the ordinary capacity of the machines. It is also made to appear that the invention has gone into general use.

While it is true that the mere fact that a device has gone into general use, and has displaced other devices which had previously been employed for analogous uses, does not establish, in all cases, that the later device involves invention within the meaning of the patent laws, yet such fact is always of importance, and is entitled to weight, when the question is whether the machine exhibits patentable invention. *Smith* v. *Goodyear Dental Vulcanite Co.*, 93 U. S. 486, 495.

We, therefore, agree with the court below that " the change

was a substantial and meritorious one, and one which was well worthy of a patent, by reason of the improvement which it produced in the operative effect of the cornsheller."

We also concur in the reasoning and conclusion of the court below respecting the novelty of the invention. While it is true that the device patented by Augustus Adams, the father of the present patentee, in May, 1866, was intended to effect the same purpose, and used likewise a revolving shaft with wings or protuberances, yet the mode of operation was entirely different. The theory of the earlier machine was to prevent the clogging of the ears of corn in the throat of the sheller by driving back some of the ears, and thus keeping them from entering the sheller simultaneously. But it seems that this interrupted the continuous flow of the ears into the sheller, and retarded the operation of shelling.

Another patent alleged as an anticipation was that granted to Augustus Adams, August 6, 1861, No. 1861, and which is asserted to contain a rotating shaft with little wheels fastened thereon, having teeth or prickers on their faces. This shaft, however, is located underneath the chute, down which the ears of corn descend, and the evidence shows that this device did not operate so as to prevent clogging. On the contrary, the clogging of the feed in this machine required the attention of one man all the time. This was the defect which the same patentee, Augustus Adams, sought to obviate by the device patented by him in 1866.

It must be admitted that both of these patents granted to Augustus Adams, one in 1861, the other in 1866, describe mechanical contrivances closely resembling the invention in question, patented by H. A. Adams, October 15, 1872. There is present in all three machines a rotating shaft with spurs or wings, and the purpose sought to be effected is the same.

But, as we have seen, when the test of practical success is applied, the conclusion is favorable to the last patent.

Where the patented invention consists of an improvement of machines previously existing, it is not always easy to point out what it is that distinguishes a new and successful machine from an old and ineffectual one. But when, in a class of

machines so widely used as those in question, it is made to appear that at last, after repeated and futile attempts, a machine has been contrived which accomplishes the result desired, and when the Patent Office has granted a patent to the successful inventor, the courts should not be ready to adopt a narrow or astute construction, fatal to the grant.

The question of infringement is readily disposed of. The defendant, the Keystone Manufacturing Company, manufactures and sells machines made under certain patents granted to Harvey Packer, and it is claimed that because, in these machines, the ears of corn do not drop down a chute to the point where they pass into the throat of the sheller, but are brought directly to the shelling devices by carriers, such difference in the mode of bringing the corn to be operated on by the shelling devices distinguishes the machines. But we agree with the court below, that there is nothing in the H. A. Adams patent which restricts his device to cornshellers where the ears are fed into a chute, through which they drop to the throat of the sheller. It is equally well adapted to be used in that form of machine, where the chute is dispensed with, and where the ears of corn are brought by other means to the throat of the machine. What we have to compare is the forcing device in the respective machines, and as we find that the defendant uses a spiked shaft at the entrance to the throat of his machine, revolving in the same direction in which the corn is running, for the purpose of urging or compelling the ears to enter the sheller, we cannot hesitate to hold it an infringement of the complainant's device.

It may be proper to say that there is a feature of the Packer machines, having reference to its operation after the corn has passed beyond the reach of the picker shaft, not found in the Adams, which seems to be a further improvement in the art of cornshelling, and which may have justified the granting of a patent for such improvement, though, of course, such a question is not now before us.

These views justify the decree of the court below, so far as it declares the validity of the patent sued on, and its infringement by the defendant. But we are unable to sustain that

decree in overruling the exceptions to the master's report, and in adjudging, in accordance with the finding of the master, the payment by the defendant company to the plaintiff of the sum of twenty-seven thousand six hundred and twenty dollars.

The record shows that the complainant did not seek to recover a license fee, nor did he offer any evidence from which his damages could be computed. He relied entirely on the proposition that the amount which he was entitled to recover could be based on the profits realized by the defendant from the sale of the patented invention, and the amount of such profits he claimed to have shown by evidence tending to show what certain third companies were alleged to have made from the sale of similar devices in similar cornshelling machines.

The reasoning of the master and of the court below on this subject can be made clearly to appear by the following extracts from the opinion of the learned judge:

"The complainant, to establish the extent of the defendant's profits, called witnesses familiar with the cost and selling price of the Sandwich, Joliet and Marseilles machines, and showed what the profits of these manufacturers were on the different sizes of machines made by them, and what proportion of these profits was fairly attributable to the defendant's device. No proofs were introduced by either party as to the actual profits realized by the defendant company, but it was evidently assumed by the master that the machines of the defendant were so near like those of the other companies in their material, form and cost of construction that the profits of defendant on machines made and sold by it must have been substantially the same as the profits made by these other manufacturers.

"Here are competing manufacturers making the same kind of machine for the same market, and the natural conclusion is that they would pursue substantially the same business methods and realize about the same profits."

While it is undoubtedly established law that complainants in patent cases may give evidence tending to show the profits realized by defendants from use of the patented devices, and thus enable the courts to assess the amounts which the com-

plainants are entitled to recover, yet it is also true that great difficulty has always been found, in the adjudicated cases, in applying the rule that the profits of the defendant afford a standard whereby to estimate the amount which the plaintiff is entitled to recover, and in defining the extent and limitations to which this rule is admittedly subject.

Such a measure of damages is of comparatively easy application where the entire machine used or sold is the result of the plaintiff's invention; but when, as in the present case, the patented invention is but one feature in a machine embracing other devices that contribute to the profits made by the defendant, serious difficulties arise.

It is unnecessary, in this opinion, to review the numerous cases, some at law, others in equity, wherein this court has considered various aspects of this question. It is sufficient to say that the conclusions reached may be briefly stated as follows: It is competent for a complainant, who has established the validity of his patent and proved an infringement, to demand, in equity, an account of the profits actually realized by the defendant from his use of the patented device; that the burden of proof is on the plaintiff; that where the infringed device was a portion only of defendant's machine, which embraced inventions covered by patents other than that for the infringement of which the suit was brought, in the absence of proof to show how much of that profit was due to such other patents, and how much was a manufacturer's profit, the complainant is entitled to nominal damages only. *Seymour* v. *McCormick*, 16 How. 480; *Rubber Co.* v. *Goodyear*, 9 Wall. 788; *Mowry* v. *Whitney*, 14 Wall. 620; *Elizabeth* v. *Pavement Co.*, 97 U. S. 126.

In the case last named it was said: "It is unnecessary here to enter into the general question of profits recoverable in equity by a patentee. The subject, as a whole, is surrounded with many difficulties, which the courts have not yet succeeded in overcoming. But one thing may be affirmed with reasonable confidence, that if an infringer of a patent has realized no profit from the use of the invention, he cannot be called upon to respond for profits; the patentee, in such case,

is left to his remedy for damages. It is also clear that a patentee is entitled to recover the profits that have been actually realized from the use of his invention."

In *Garretson* v. *Clark*, 111 U. S. 120, 121, this court quoted with approval the statement of the rule made in the court below by Mr. Justice Blatchford: "The patentee must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative."

*Tilghman* v. *Proctor*, 125 U. S. 136, 146, is an important case, in which many of the earlier cases were reviewed, and it was there said: "The infringer is liable for actual, not for possible, gains. The profits, therefore, which he must account for are not those which he might reasonably have made, but those which he did make, by the use of the plaintiff's invention; or, in other words, the fruits of the advantage which he derived from the use of that invention, over what he would have had in using other means then open to the public and adequate to enable him to obtain an equally beneficial result. If there was no such advantage in his use of the plaintiff's invention, there can be no decree for profits, and the plaintiff's only remedy is by an action at law for damages."

In the light of these decisions there was error in the court below, not in any formal disregard of the rule restricting the plaintiff's recovery to the profits actually realized, but in permitting the plaintiff to prove, not the defendant's profits, but those realized by other companies. This was in effect showing what, in the opinion of the master and the court, "he might reasonably have made, and not those which he did make."

The fallacy of this application of the rule is obvious, for nothing is more common than for one manufacturing concern to make profits where another, with equal advantages, operates at a loss.

The learned judge seems to have thought that the course of the defendant, in not itself disclosing the condition of its business, justified the master in estimating its profits upon

the basis of those of other similar establishments. But, as we have seen, the burden of proof was upon the plaintiff. He relied, notwithstanding defendant's objections, on incompetent and irrelevant evidence, and the decree in his favor, in so far as it awards more than nominal damages, cannot be sustained.

The decree of the court below is

*Reversed, the costs in this court to be paid by the appellee; and this cause is remanded with directions to enter a decree for nominal damages with costs.*