### STIRLING CO. v. STANDARD SNUFF CO.

(Circuit Court, M. D. Tennessee. April 26, 1902.)

PATENTS—INFRINGEMENT—STEAM BOILERS.

    The Stirling patent, No. 407,260, for a steam boiler of the vertical water tube type, is valid, and entitled to a liberal construction covering equivalents. As so construed, *held* infringed by the boiler of the Turner patent, No. 594,163, which differs from that of the Stirling patent chiefly in having two mud drums instead of one.

In Equity.

Ephraim Banning and Thomas A. Banning, for complainant.
Almon Hall and Brown & Akers, for defendants.

CLARK, District Judge. This bill charges defendants with infringement of letters patent of the United States No. 407,260, issued to the International Boiler Company, Limited, as assignee of Allan Stirling, July 16, 1889, for an improvement in steam boilers. The principal defense is noninfringement, which defense involves a construction of the Stirling patent.

The boiler of the Stirling patent consists essentially of elevated cross drums, known technically as steam and water drums, a lower cross drum, known technically as a mud drum, connecting banks of tubes extending from the elevated drums to the lower drum, pipes communicating between the steam spaces of the elevated drums, pipes communicating between the water spaces of the elevated drums, and a furnace setting which causes the flame and gases to travel up and down along and among the tubes so as to completely envelope the same. The patent has two claims, the first covering the combination of elevated and lower drums and their connecting tubes and pipes; and the second, this combination with the addition of the furnace setting. In each claim the mud drum feature is referred to as the "single mud drum A."

The defendant's boiler, manufactured by the Turner Engineering Company, is shown in the George E. Turner patent, No. 594,163, November 23, 1897. It is similar to the Stirling boiler in its arrangement of drums, tubes, and other features; but its rear bank of tubes is somewhat modified in form and position, and an additional mud drum and bank of tubes are employed. The question in the case is whether these modifications take the Turner boiler out of the Stirling patent.

The patent was litigated in Stirling Company v. Pierpoint Boiler Company (C. C.) 72 Fed. 780, in which Judge Buffington, Judge Acheson concurring, held that it was not infringed by a vertical water tube boiler having multiple mud drums. This case was taken to the Court of Appeals for the Third Circuit, and after argument

in that tribunal compromised by the parties. In view of this compromise, no authoritative decision was rendered in the Court of Appeals, but the cause was remanded, with instructions to the Circuit Court to grant a rehearing and enter such decree as the parties might agree upon or the court consider proper; and following this the Circuit Court vacated its first decree, granted a rehearing, and finally ordered a perpetual injunction covering three forms of boilers each having multiple mud drums. As thus appears, the Circuit Court finally construed the Stirling patent as covering equivalents, Pierpoint's multiple mud drums being treated as the equivalent of Stirling's "single mud drum." Although the final decree was entered without argument, it had, in a practical and legal view, the effect of wiping out the stain put upon the patent by the court's first decision; and therefore, even disregarding it as an authority, the question of construction may be considered an open one.

In the Turner boiler three tubes, five inches in internal diameter, extend from the rear elevated drum backward and downward, one from near each end of the drum and one from its middle, the two end tubes communicating at their lower ends with the front mud drum, and the middle tube at its lower end with the rear mud drum, the vertical portion of each of these tubes being partially imbedded in the rear wall of the furnace setting. The two end tubes serve to connect the rear elevated steam and water drum with the front lower mud drum, this connection being, it is true, somewhat indirect or circuitous. Starting from the front mud drum, the course of circulation of the water is up through the front bank of tubes to the front elevated steam and water drum, thence across through the water connecting pipes to the rear elevated steam and water drum, thence down through the large end tubes just described to the front mud drum, and so on in circuit. In its first circulatory movements, that part of the water which is carried down from the rear drums through the middle connecting tube into the rear mud drum passes up again through the middle or additional bank of tubes into the rear elevated steam and water drum; but all the water eventually passes from the rear elevated steam and water drum, backward and downward through the end tubes into the front lower mud drum, thence up through the front bank of tubes into the front elevated steam and water drum, thence back through the water connecting pipes into the rear steam and water drum, and so on in circuit. The large end tubes, therefore, perform the function of conducting the water down from the rear elevated steam and water drum and passing it forward through the front lower mud drum into the hottest parts of the boiler; and all the water is required to pass through the front lower mud drum before reaching these hottest parts or being generated into steam. In practical effect, the function and operation of these parts is the same as in the Stirling boiler.

In the Turner boiler the rear mud drum and the bank of tubes connecting it with the rear elevated steam and water drum are claimed by defendant's experts to have the effect of an economizer; that is, of providing for the heating of feed water and precipitation

of sediment therein before the water is conducted into the hottest parts of the boiler. Even if admitted to the fullest extent presented, this preliminary heating and purifying of the water do not materially affect the function or operation of the front lower mud drum. The statement in the Stirling patent that "the water is forced to pass through the mud drum and deposit its sediment therein" does not necessarily mean that all or any particular part of the sediment must be deposited in this drum. One of the characteristic features of the Stirling patent is the provision which it makes for a strong, positive circulation in the hottest parts of the boiler, where most of the steam is generated, and whenever a "single mud drum" is employed in securing or producing this circulation the requirements of the patent in this respect are complied with. The patent calling for a "single mud drum," there must of course be one principal mud drum, and this mud drum must be so connected with the elevated steam and water drums that substantially all the water will have to pass through it before reaching the hottest parts of the boiler; but the patent does not require all the sediment to be deposited in this mud drum, or prevent the previous removal of any part thereof by the use of additional mud drums or otherwise. Differently stated, the patent does not prevent the use of additional mud drums, in connection with the principal mud drum or separate therefrom, for removing sediment or other purposes.

The defendants have introduced a large number of patents and publications to illustrate the prior state of the art; but there is nothing in these prior exhibits materially limiting the scope of the Stirling patent. None of them shows a boiler having the same construction and possessing the same advantages in operation. As improved by Stirling himself, his boiler has practically superseded all other vertical water tube boilers in the market. In view of this and other circumstances, the court should be slow "to adopt a narrow or astute construction fatal to the grant." Keystone Manufacturing Company v. Adams, 151 U. S. 139, 145, 14 Sup. Ct. 295, 38 L. Ed. 103; Westinghouse Air Brake Co. v. New York Air Brake Co., 63 Fed. 962, 969, 11 C. C. A. 528. Even if not strictly a pioneer in the art, the Stirling patent stands in such meritorious position as to be entitled to the liberal construction suggested in Morley Machine Co. v. Lancaster, 129 U. S. 263, 273, 9 Sup. Ct. 299, 32 L. Ed. 715; McCormick Harvesting Machine Co. v. C. Aultman Co., 69 Fed. 371, 386, 387, 16 C. C. A. 259, and similar cases.

I therefore hold that, the Stirling patent covering equivalents, the changes which the Turner Engineering Company has made, as above described, are immaterial, and insufficient to avoid the charge of infringement.