## SWAN CARBURETOR CO. v. GENERAL MOTORS CORPORATION.

### No. 18073.

District Court, N. D. Ohio, E. D.

Dec. 3, 1941.

William H. Boyd, F. O. Richey, F. M. Bosworth, E. D. McCurdy, and W. C. Sessions, all of Cleveland, Ohio (Richey & Watts and Boyd, Brooks & Wickham, all of Cleveland, Ohio, of counsel), for plaintiff.

Drury W. Cooper, of New York City, Harold W. Norman, of Chicago, Ill., Allan C. Bakewell, of New York City, and Lawrence C. Spieth, of Cleveland, Ohio (Spieth, Taggart, Spring & Annat, of Cleveland, Ohio, Cooper, Kerr & Dunham, of New York City, and Zimmerman & Norman, of Chicago, Ill., of counsel), for defendant.

NEVIN, District Judge (sitting by designation).

On January 20, 1939, cases Nos. 18073 and 19207, both pending in this court, were, by order of court, consolidated and ordered to be proceeded with thereafter as one cause under the title of the Swan Carburetor Company v. General Motors Corporation, No. 18073, consolidated cause.

The first case (No. 18073) was filed on June 12, 1934. In it recovery was sought

of royalties on manifolds manufactured by defendant, General Motors Corporation, from April 1, 1930, to March 31, 1934, inclusive. The second suit (No. 19207) was filed November 29, 1937. It covered the period of the production, use and sale of manifolds under the same contract from April 1, 1934, the last date involved in the other suit (No. 18073), to September 30, 1937, inclusive, the last date for payment period involved in the second suit.

A jury having been waived and the parties having consented to the transfer of the consolidated cause to the non-jury docket, the consolidated cause was, by order entered February 10, 1939, referred by the court to a Special Master, who was "directed to define and to report upon all of the issues as joined in the pleadings, and to set forth separately in his report his findings of fact and conclusions of law thereon and to proceed and file his said report with the Clerk of this Court together with a transcript of the proceedings and of the evidence and the original exhibits."

Thereafter, the consolidated cause came on to be heard before the Special Master, who, on July 19, 1940, filed his report with the clerk of this court. In his report, at the outset, the Special Master makes the following statement, which is helpful to a better understanding of the case presented. He says:

"The action is one at law in which a jury has been waived and proceeds as consolidated with Cause No. 19207.

"The issues are presented by the plaintiff's amended petitions, amended answers to the amended petitions, and an amended reply to the amended answer to the amended petition.

"The action is brought to recover royalties claimed to be due and payable under a certain patent licensing agreement entered into by and between the plaintiff and the defendant as of June 6th, 1923, a copy of which agreement is attached to the Amended Petition and is marked Exhibit A.

"By this agreement the defendant obligates itself, under certain conditions, to pay certain royalties to the plaintiff as owner of a certain then pending application for a patent upon an invention by one John W. Swan, the said application being for means for distributing fuel to internal combustion engines. The device is known as a mani-

fold. A continuation of this application subsequently ripened into a patent to Swan No. 1,536,044 having claims for both means and method 'to facilitate the distribution of fuel in internal combustion engines' (P. X 2).

"There are, of course, other terms of this contract which will be considered if they appear to affect the issues of this case, and royalties under a Canadian patent also are involved.

"There is no dispute between the parties as to the number of manifolds made and sold which the plaintiff claims are comprehended by this contract, but the defendant contends that none of these manifolds are defined by the claims of the said patent, contends that they are not comprehended by the terms of the contract, and says that it should not be required to pay royalties upon them.

"Of itself this question ordinarily would have to be considered no differently than would any question of infringement of patent, but the question of infringement is greatly complicated in this case by the fact that in two other cases between these parties, and in one case between the plaintiff and The Reeke-Nash Company, who, it is alleged, is in such privity with defendant that the latter is bound by the decision as if it itself had been the party defendant, there have been determinations of facts and questions in issue by which these parties now, it is contended, must be considered to be bound.

"Both parties as to certain matters rely upon the bar of res judicata.

"The prior cases above referred to are:

"(1) Swan Carburetor Co. v. General Motors Corporation, D.C.N.D.Ohio E. Div., 42 F.2d 452, Westenhaver J. Action for royalties. In this case it was found that certain manifolds were within the same contract involved in the present suit. Judgment was rendered for the plaintiff. On appeal the judgment was affirmed upon procedural grounds. [6 Cir.] 44 F.2d 24.

"(2) Swan Carburetor Co. v. General Motors Corp., D.C.N.D.Ohio E. Div., Hahn J.[1] This also was an action at law for royalties under the contract, and was tried to a jury. Judgment was for the plaintiff. The defendant filed a cross bill in this suit seeking a reformation of the contract, which reformation was denied. The action on the

---

[1] No opinion for publication.

cross bill was heard as a separate suit in equity.

"(3) Swan Carburetor Co. v. Reeke-Nash Motors Co.[1] This was a suit for infringement of patents. It was referred to Wm. B. Woods Esq. as Special Master Commissioner. The claims of the patent No. 1,-536,044 were found by him to be valid and infringed, and his report was confirmed by the District Court (Hahn J.).

"(4) General Motors Corporation v. Swan Carburetor Co. (two cases). Reeke-Nash Motors Co. v. Swan Carburetor Co. [6 Cir., 1937] 88 F.2d 876. Under this caption the above General Motors cases in Law and Equity before Judge Hahn, and the Reeke-Nash case are reviewed on appeal."

From the foregoing, it is apparent that there has been previous litigation, to some considerable extent, between the parties to the instant suit and between plaintiff herein and others.

In his report the Special Master makes (inter alia) the following findings of fact, to-wit:

"(8) I find that defendant has made, used or sold 423,066 passenger car manifolds known herein as 1932 Chevrolet manifolds, Part No. 836,726, which are of a type defined particularly by Claim 20 of this patent and that defendant is liable to the plaintiff for royalties of 15¢ each for all of such manifolds made in the year 1931 and 17½¢ each for all of such manifolds made in the year 1932, and 20¢ each for all made in the years 1933, 1934, 1935, 1936 and the first three quarters of 1937.

"(9) I find that none of the other manifolds made, used or sold by the defendant, and which the plaintiff in this suit now claims are within the terms of the contract, are such manifolds as are comprehended by the claims of the Swan patent No. 1,-536,044, and that none of them are identical or substantially identical with any of those manifolds which heretofore have been adjudged to be within the contract in actions by the judgments in which these parties are bound," and he recommended that "judgment be rendered for the plaintiff and against the defendant in the amount of One hundred seven thousand fifty-six and 58/100 Dollars ($107,056.58).[2]

In their brief, counsel for plaintiff, referring to the manifolds upon which the Special Master based his Findings of Fact Nos. 8 and 9, say: "We will, for convenience, refer to these manifolds hereafter as the 1932 Chevrolet manifold and the other manifolds, respectively."

In ruling on the objections herein the court will follow the method adopted by counsel and, as a matter of convenience here also, will refer to the manifolds as "the 1932 Chevrolet manifold and the other manifolds".

The manifold for the production of which the Master recommended recovery of royalties is:

The 1932 Chevrolet passenger car manifold, Exhibits 200-B and 200-C, (drawings) Fig. 1 of Exhibit 40-A, M.R. pp. 33 to 39, inc.

The "other manifolds" for which the Master denied recovery are:

(1) Chevrolet manifolds for

(a) 1932 truck models, Exhibits 200-E and 200-F, (drawings) Fig. 1 of Exhibit 40-A, M.R. pp. 40, 41;

(b) all 1933 models, Exhibits 201 (physical) and 201-B to 201-I, inc., (drawings) Fig. 2 of Exhibit 40-A, M.R. pp. 42-44;

(c) all 1934, 1935 and 1936 models, Exhibits 202, 202′, 202-A (physical) and 202-B to 202-D, inc.; 203-B to 203-F, inc.; 204-B to 204-I, inc., (drawings) Fig. 3 of Exhibit 40-A, M.R. pp. 45-48;

(d) all 1937 models, Exhibits 205 (physical) and 205-B, 205-D and 205-E, (drawings) Fig. 4 of Exhibit 40-A, M.R. p. 49.

(2) Oldsmobile manifolds, Plaintiff's Exhibits 206, 208 and 209 (physical) and 206-B to 206-D, inc.; and 207-B to 207-D, inc.; and 208-B to 208-D, inc.; and 209-B and 209-D, (drawings) Fig. 5 of Exhibit 40-A, M.R. pp. 50 and 51.

(3) The General Motors Truck manifolds of the type similar to the Chevrolet manifolds, Plaintiff's Exhibits 216 (physical) and 216-B and 216-C, (drawings) Fig. 6 of Exhibit 40-A, M.R. p. 52.

---

[1] No opinion for publication.

[2] There is no disagreement as to this specific amount. In his report (p. 80) the Special Master states that "the parties are in agreement as to the total amount of royalties herein found to be recoverable." Plaintiff objects to the recommendation because it fails "to comprehend the additional amount of award sought by plaintiff" and hence it is (so plaintiff claims) "insufficient in amount". Defendant objects to the recommendation of a judgment against it in any sum whatsoever.

(4) The Buick 8 cylinder up-draft manifold, Plaintiff's Exhibits 210-B and 210-C, (drawings) Fig. 7 of Exhibit 40-A, M.R. p. 57.

(5) General Motors Truck manifolds of the square or rectangular construction, Plaintiff's Exhibits 212 (physical) and 211-B, 212-B, 213-B and 217-B, (drawings) Fig. 8 of Exhibit 40-A, M.R. pp. 53–56 inc. (the Master here apparently mistakenly referred to manifolds Part Nos. 067,873 and 068,233, which were Plaintiff's Exhibits 214-B and 215-B, (drawings) the same having been dropped from plaintiff's claim during the trial, and the Master probably inadvertently failed to make specific reference to the truck manifold Part No. 069,801, Plaintiff's Exhibit 217-B).

On July 29, 1940, plaintiff filed its objections to so much of the Special Master's report as denied it recovery on all the "other manifolds" and, on the same day, defendant filed its objections to those portions (set out in the objections) of the report "dealing with the 1932 Chevrolet passenger car manifold".

The consolidated cause is now before the court on these objections to the report of the Special Master.

As heretofore indicated, Swan Patent No. 1,536,044 is for "Method and means to facilitate the distribution of fuel in internal-combustion engines." It would serve no useful purpose for the court to here enter upon a discussion of the patent or its claims, nor to state of what a manifold consists—to do so would amount to mere repetition, as it has all been set forth in detail in the cases reported in 42 F.2d 452 and 88 F.2d 876 to which, for such purposes, reference is here made. (In his report (p. 24 et seq.) the Special Master—leaving "for later consideration the method which the claims define"—states that, based on "a study of the claims, specification and drawings of the patent, as well as of the language of the Courts which have been called upon to consider this patent," he has reached certain conclusions as to what "Swan discloses", which he thereupon sets forth.)

In view of the contract, defendant is estopped to deny the validity of the claims of the patent. The validity of the patent is not, therefore, an issue in the case.

### As To Plaintiff's Objections.

The license contract under which plaintiff seeks recovery in the *instant* case is the same contract under which recovery was had by plaintiff against defendant herein in both the preceding actions. Defendant has not cancelled nor offered to cancel this license since the date of its inception in 1923. Plaintiff submits that under the contract an exclusive basis for recovery in both the preceding judgments was the finding that the manifolds made and sold by defendant were covered by Swan Patent No. 1,536,044 from and after the date of its issuance April 28, 1925,[3] and that the same basis for recovery is asserted in this action. Plaintiff asserts that the same patent claims cover defendant's manifolds in this action that were found to cover defendant's manifolds in the prior actions; that the same prior art is exhibited by defendant that was exhibited in one or both of the prior actions, and that. this prior art is offered for the same purpose, to-wit, restricting the same patent claims whereby to exclude from their scope defendant's manifolds in issue.[4]

Plaintiff says that it is its "position that the parties are concluded by every right, question or fact that was controverted and decided in either of the first and second General Motors suits. This, however, is not true of the Reeke-Nash case, since it has not been established that there was privity between the General Motors and the Reeke-Nash Company. This is unimportant because since the rulings, findings, conclusions and decisions in the Reeke-Nash case were by Courts in this District and Circuit, comity should be, and

---

[3] Recovery for defendant's production prior to the issuance of the patent in April, 1925 was included in the first judgment on the basis of the disclosure of the original Swan application referred to in the license contract.

[4] In the (first) case between the parties herein (42 F.2d 452, at page 454) Judge Westenhaver in his opinion says: "In view, however, of defendant's right to cancel, and its action in expressly refraining from so doing, it would seem that the patent claims ought not to be scrutinized with extreme care in order to find a way to save defendant from complying with its promise. Defendant knows better than any one else the value to it of keeping the license agreement in force. Hence the most liberal view should be adopted as to the scope of patent claims permissible under the prior art."

we submit is, as effective, and entitled to little, if any, less weight than estoppel by judgment under the circumstances (Gear Grinding [Mach. Co.] v. Reo [Motor Car Co., D.C.] 20 F.2d 702)", and that "time and again the Courts have refused to permit parties a second day in Court upon the same issues, questions or facts. As is plain from the quotations from the briefs of the parties hereto presented at page 6 of the Master's report, this the parties have agreed upon. This being the law, the only question remaining was whether or not the manifolds, or the methods employed therein, charged in the instant cause were either identical, or substantially identical, with any of the manifolds, or the method employed thereby, which were held to come within the contract in the former causes. Warner v. Tennessee Products Co. [6 Cir.] 57 F.2d 642; Mills Novelty [Co.] v. Monarch Tool [& Mfg. Co., 6 Cir.] 76 F.2d 653; General Motors [Corp.] v. Swan [Carburetor Co., 6 Cir.] 88 F.2d 876, 883.

"Unless the art as it had been adjudicated by the Courts in the former causes, or new art presented here for the first time, 'justified' the defendant's other manifolds or the methods employed thereby in the instant cause under the rule stated by Judge Westenhaver at 42 F.2d 452, 454, judgment must be for the plaintiff on defendant's other manifolds."

Plaintiff further urges that the Special Master has, by his findings and rulings, in effect, found that the same prior art, which was found to be failure in the prior actions, can be taken in this action to be successful, i. e. to substantially equal Swan and the "other accused" manifolds in purpose, accomplishment and results, and that in so doing he has thereby newly restricted and narrowed the scope of the patent claims in this action to the point of destroying the meaning thereof as determined in the prior actions and judgments between the parties, and this "notwithstanding the Master's finding, to which none object (Report pages 8 and 13), that 'no important new evidence to limit the scope of the claims has been introduced here.'"

Defendant denies that the scope of the patent claims were "newly restricted and narrowed" in this action. It asserts that it "does not seek to impose further limits on the scope of the claims," and says that "We rely, as did the Master, upon the limitations already imposed by Judge Westenhaver and the Circuit Court of Appeals for the Sixth Circuit."

Upon the record, the court feels bound to conclude that plaintiff is right in its contention, and that the Special Master has erroneously given all the attributes of success to the same prior art devices which have been heretofore adjudged to be failures.

■ Plaintiff says in its brief: "Every ruling against the plaintiff is predicated upon the cardinal error of disregarding the controlling findings in the prior actions, and thereby employing 'prior effort and failure' to force limitations, newly conceived by the Master, into Swan's patent claims, where they did and do not exist, all in order to spell out 'non-infringement' herein. Such is not the law", (citing) Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U.S. 428, 431, 31 S.Ct. 444, 55 L.Ed. 527; Keystone Mfg. Co. v. Adams, 151 U.S. 139, 14 S.Ct. 295, 38 L.Ed. 103; Consolidated Window Glass Co. v. Window Glass Mach. Co., 3 Cir., 261 F. 362. With the foregoing statement the court agrees.

■ In his report (p. 13) the Special Master says: "I conclude however that the evidence does not show that the advance made by Swan entitles this patent to be considered as a pioneer patent." The court finds itself unable to agree with this conclusion of the Special Master. Judge Westenhaver found that Swan introduced "a new and original principle of operation." 42 F.2d 455. In the Reeke-Nash case the Special Master (Mr. Woods) held as a conclusion of law: "(3) That the patent in suit, No. 1,536,044, is a basic patent and defines and covers a pioneer invention or inventions, and is entitled to a liberal interpretation and a broad range of equivalents." His (Special Master Woods') report was confirmed by Judge Hahn of this Court. This court agrees with this conclusion of Special Master Woods and Judge Hahn.

On appeal, the Court of Appeals of this (Sixth) Circuit (88 F.2d 887) stated: "Whether or not patent No. 1,536,044 described a pioneer invention, as in effect held in the General Motors case (42 F.(2d) 452), under the specifications, which are to be read with the claims, though they may not expand or limit them, Swan is entitled to a range of equivalents broad enough to cover appellant's manifolds. Cf. Bishop & Babcock Mfg. Co. v. Fulton Co. [6 Cir.] 37 F. (2d) 293. This is true even as to claims 11,

504

12 and 13, in which, as in the other claims, the gist of the inventive concept was the creation of the maximum turbulence as above described, not restricted to any particular form. Cf. United Shoe Machinery Corp. v. O'Donnell Rubber Products Co. [6 Cir.] 84 F.(2d) 383.".

■ Even though the Swan patent should not be considered as a "pioneer patent", nevertheless, if defendant's devices are "merely colorable" departures, they are covered by the patent. In Bardes Range & Foundry Co. v. American Engineering Co., 109 F.2d 696, 698, the Court of Appeals of this Circuit say: "Except where form is of the essence of the invention, one device is an infringement of another 'if it performs substantially the same function in substantially the same way to obtain the same result,' Union Paper-Bag Machine Company v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935, and mere colorable departures do not avoid infringement, McCormick v. Talcott, 20 How. 402, 405, 15 L.Ed. 930. A close copy which seeks to use the substance of the invention, and although showing some change in form and position, uses substantially the same device, performing precisely the same offices with no change in principle, constitutes an infringement. Ives v. Hamilton, 92 U.S. 426, 430, 23 L.Ed. 494. Even where the invention must be restricted in view of the prior art to the form shown and described by the patentee and cannot be extended to embrace a new form which is a substantial departure therefrom, there is infringement where the departure is merely colorable. Duff v. Sterling Pump Co., 107 U.S. 626, 639, 2 S.Ct. 487, 27 L.Ed. 517; Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 50 S.Ct. 9, 74 L.Ed. 147."

■ The court is of opinion that the "other manifolds" herein referred to perform "substantially the same function in substantially the same way to obtain the same result", and that, therefore, the accused devices infringe those of the patent in suit.

The court finds, therefore, that the objections of plaintiff are well taken, and that they should be, and they are, sustained. Finding of Fact No. 7 is not objected to "standing alone". The other objections set forth in subparagraphs (a), (b), (c) and (d) of Paragraph 14 of plaintiff's objections are well taken and sustained.

As To Defendant's Objections.

In its objections, defendant objects to certain paragraphs, sentences and portions thereof (all as set out in the objections) and then objects to:

"7. So much of Finding of Fact No. 8 as finds that said manifold is of a type defined particularly by claim 20 of the patent and that defendant is liable to plaintiff for royalties on account of the production of said manifold.

"8. The recommendation that judgment be rendered for plaintiff and against defendant in the amount of $107,056.58 or any other sum.

"9. The failure to recommend that defendant recover its costs."

The court finds the objections of defendant not well taken and that they should be, and they are overruled. The court finds (as did the Special Master—M.R. P. 38) that the structure of Ex. 200-B is substantially the structure of Claim 20 of the patent. Its mode of operation may be said to be substantially the same, and the result of its performance is substantially the same.

In their brief, counsel for defendant say: "In fact the outstanding question is simple: Does the defendant employ the Swan structure and do its manifolds operate in accordance with the Swan method?" In the view of the court, the answer to this question is "Yes".

In arriving at this conclusion the court has not been unmindful of the cases of Nash Motors Co. v. Swan Carburetor Co., 4 Cir., 105 F.2d 305, and Swan Carburetor Co. v. Chrysler Corporation, D.C.E.D. Mich., 34 F.Supp. 766. In the former, Judge Parker, in his dissenting opinion, points out (105 F.2d at page 311) the conflict between the conclusion there reached by the majority of the Court and the decisions in this (Sixth) Circuit, while, as between the latter and the instant case, there is, as stated by counsel in oral argument, "a marked difference * * *. Here the defendant is estopped to deny the validity of the patent or the claims in suit. There the defendant was not."

So much of the Special Master's report as finds in favor of plaintiff on the 1932 Chevrolet passenger car manifold (see Finding of Fact No. 8 and recommendation as to judgment) is confirmed.

The court finds and holds, therefore, that judgment should be rendered for plaintiff

for all the manifolds sued for, and for its costs.

It is stated in the Special Master's report (pp. 80, 81) that "If the Court should find that there should be further recovery than as herein recommended, it appears that the parties will agree as to the number of any other manifolds for which such recovery may be adjudged, and the royalties payable therefor." (See also p. 3 of Master's report).

The consolidated cause is therefore recommitted to the Special Master with instructions to ascertain and report (by filing with the Clerk) to the court the amount for which judgment should be rendered against defendant, in accordance with the ruling of the court herein, on all the manifolds made and sold and involved in this consolidated cause, in addition to those for which such judgment has already been recommended by the Special Master in his report.

Counsel may prepare and submit to the court an order in accordance herewith.