Orison D. GLENDENNING, Plaintiff,

v.

S. S. MACK, Bertha G. Mack, and R. J. Krueger, as individuals d.b.a. G. E. Mack Company, a partnership, and Fortner & Perrin, Inc., intervener, Defendants.

Civ. A. No. 4898.

United States District Court
D. Minnesota,
Fourth Division.
Jan. 22, 1958.

John W. Adams (of Williamson, Schroeder, Adams & Meyers), Minneapolis, Minn., for plaintiff.

John D. Gould (of Merchant & Merchant), Minneapolis, Minn., for defendants.

NORDBYE, Chief Judge.

This suit was commenced on July 8, 1954. Plaintiff alleged that the G. E. Mack Company, a partnership, and the individual defendants comprising that partnership, were marketing a trouser hanger known as the "Topper" hanger, which infringed plaintiff's patent No. 2,-171,693 issued on September 5, 1939. By stipulation, Fortner & Perrin, Inc., manufacturer of the Topper hanger, was granted leave to intervene and became a party to the action. Plaintiff alleges infringement of Claims 1 and 2 of his patent, which reads:

"1. A trouser hanger including, a shank arranged at its upper end to be supportingly connected with a suitable support, a pair of arms formed of resilient material extending oppositely outwardly and somewhat upwardly from the lower portion of said shank, the free ends of said respective arms being bent into respective U-shaped elements disposed in parallel, substantially vertical planes generally normal to said arms and adapted for upward insertion of the vertical portions thereof in the ends of the cuffs of a pair of trousers.

"2. A trousers hanger constructed of resilient wire and including, a shank arranged at its upper end to be supportingly connected with a suitable support, and a pair of arms extending oppositely outwardly and somewhat upwardly from the lower portion of said shank, the free ends of said respective arms being bent into respective U-shaped cuff-engaging elements disposed in parallel, substantially vertical planes generally normal to said arms and the respective legs of each of said U-shaped elements projecting upwardly for insertion in the corresponding ends of respective cuffs of a pair of trousers."

From September 5, 1939, the date of his patent, until December 13, 1949, a period of some ten years, plaintiff failed to promote the sale or manufacture of his hanger. On December 13, 1949, he granted an exclusive license to manufacture and market the hanger to one William H. Lynch, a resident of the State of New York. Lynch experimented with various designs made according to the Glendenning patent and made some wire hangers, but he did little, if anything, to promote the sale of the hanger. It appears that about one year after the execution of the license agreement to Lynch, the latter took on a full-time position as an automobile dealer and apparently abandoned any attempt to carry out the terms of this license agreement. At least, Glendenning never received any royalties from Lynch. The parties have stipulated that neither Glendenning nor Lynch ever sold the wire hanger depicted in plaintiff's patent during its entire life. On October 20, 1955, plaintiff notified Lynch that the license agreement was cancelled due to Lynch's failure to manufacture and market the hanger. A similar notice of cancellation had been sent to Lynch on January 25, 1954, but Lynch never received this letter due to a change of address.

In 1945 one R. A. Kelsey, a resident of California, filed an application for a patent on a garment hanger. The predecessor of Fortner & Perrin, Inc., began to manufacture the allegedly infringing hanger under what they believed to be a validly pending Kelsey patent. The patent was granted to Kelsey on May 10, 1949, as patent No. 2,470,079. There is some question as to whether or not the Topper hanger purportedly manufactured under the Kelsey patent conforms to the specifications of that patent in that the arms of the Topper hanger as manufactured slope upward. Neither the specifications of the Kelsey patent nor the sketch accompanying it discloses upward sloping arms.

Fortner & Perrin, after a somewhat indifferent beginning, were able by persistent promotion methods to successfully manufacture and sell the Topper hanger to the trade throughout the Nation.

The Glendenning patent was cited as a reference by the Patent Office when the Kelsey patent was issued. It was on January 4, 1950, that Lynch notified Fortner & Perrin that its hanger infringed the Glendenning patent. When Lynch was informed by Fortner & Perrin that it was manufacturing its hanger under the Kelsey patent, Lynch took no further action and did not notify Glendenning of his letter or Fortner & Perrin's reply. Plaintiff was unaware of the Topper hanger until September, 1953.

Both the Glendenning and the Topper hanger are designed to hang trousers by engaging them under the cuffs and both hangers utilize the same principles in achieving the desired results; that is, a hanger which will support a pair of trousers easily and reliably, and which will tend to preclude the possibility of the trousers being disengaged from the hangers. Likewise, both hangers will tend to retain the crease in the trousers when hung.

It is recognized, of course, that the patent granted to Kelsey does not insure against infringement of prior patents, Keystone Mfg. Co. v. Adams, 1894, 151 U.S. 139, 14 S.Ct. 295, 38 L. Ed. 103, but the fact that Fortner & Perrin assumed to, and did, manufacture the Topper hanger during the entire period of the existence of the Glendenning patent is an element that becomes of some significance in determining the scope of the claims of the Glendenning patent in view of the fact that the latter patent may be characterized as a paper patent.

The under-the-cuff trouser hanger is old in the art. Beutler patent, No. 2,014,-165, patented in 1935, teaches the wire under-the-cuff trousers support. In that patent, the cuff-engaging members support the cuff over its entire width, but there is no showing that Buetler's hanger stretched the cuff; it merely supported the trousers by under-the-cuff wire members. There is to be found in the Buetler patent, however, every element of the Glendenning patent except the claimed stretching of the cuff by the use of wire arms sloping upward. In other words, Glendenning first advanced the idea in a pants hanger of outwardly and upwardly resilient wire arms designed to engage the inside of the cuffs and, by the weight of the trousers, effect a downward and outward movement of the engaging members so that the cuff would be stretched by the weight of the trousers. But the Kellerth patent No. 2,004,284, issued in 1935, discloses in a pants hanger resilient wire arms extending downwardly from the supporting shank and then sloping upwardly. The stretching action of the bottom of the trousers is accomplished in Kellerth by a design which utilizes the resiliency inherent in wire, although instead of employing a cantilever effect as taught by Glendenning, there is a spring type of pressure produced by the downward and upward sloping arms. Although the Kellerth patent does not suggest that the hanger is adaptable for under-the-cuff hanging, it is evident that it could readily be used for that purpose; that is, instead of using the clips as clamps to engage the trouser cuffs, these loops were entirely suitable for use as members to be inserted inside the cuffs. If the Kellerth design was used as an under-the-cuff hanger, there would be a stretching of the cuffs produced by the spring action of the arms so as to function for all practical purposes as effectually as the Glendenning hanger. Kellerth failed to teach the use of his hanger as an under-the-cuff hanger, but, in view of Buetler, it would seem that it would be fair to assume that such use would be apparent to the average person skilled in the art. Moreover, a design patent issued to Heimann in 1900, Patent No. 32,764, discloses a wire skirt hanger which utilizes upward sloping resilient arms so that when the skirt was hung at the waist band, the hanger

was pulled downward by the weight of the skirt, forcing a lateral extension of the cantilever arms. Likewise, stretching of trousers by a hanger so as to maintain its crease and to preclude the disengaging of the trousers from the hanger was old in the art. See Wyman, No. 437,390 (1890) and Francsics, No. 1,780,153 (1928). Indeed, that element in a garment hanger was recognized in the art as an evident necessity in hanging trousers without cuffs where the engaging elements were on the inside of the pant leg.

 The state of the prior art discloses that, at best, the Glendenning patent had a narrow scope of novelty. All of the elements in his patent are to be found in the prior art. The Court recognizes that elements, although they are to be found helter-skelter in the prior art, do not necessarily preclude patentability of a new and useful combination of these elements. Diamond Rubber Co. of New York v. Consolidated Rubber Tire Co., 1911, 220 U.S. 428, 443, 31 S.Ct. 444, 55 L.Ed. 527; Loom Co. v. Higgins, 1881, 105 U.S. 580, 591, 26 L.Ed. 1177. But the Court does not find it necessary to pass upon the validity of the Glendenning patent. Suffice it to say that the state of the prior art, the file wrapper history of the Glendenning patent, and the non-use of the patent by Glendenning, are factors which constitute such valid limitation upon the scope of the Glendenning structure that a finding of non-infringement should be made.

Claim 8 of the original Glendenning application provided for a broad scope of the patent. It called for upward sloping resilient arms provided with "means formed on the free ends of the respective arms for engaging the inner sides" of trouser cuffs. This claim was later abandoned, and obviously Glendenning lost his claim that any means formed on the free ends of the arms are within the scope of his patent.

Although the Topper structure with its loops may be referred to as U-shaped, the particular loop design of the Kelsey patent does not consist of U-shaped cuff engaging elements which are "normal" to said arms. True, it may be said that there is a U-shape to the loop of the Topper hanger when looked at from the end, but that is a mere happenstance in the structure and has nothing to do with the novelty, efficiency or effectiveness of the hanger.

 Glendenning obtained his patent on September 5, 1939. For a period of ten years, as far as the record indicates, nothing was done to market or sell any device under the patent. Then on December 13, 1949, he granted Lynch an exclusive license "to make, use and sell" under the patent. Lynch, as far as this record indicates, did nothing to make or sell any hangers under the patent. Lynch became the legal owner of the patent rights after the assignment. Glendenning knew that Lynch was not selling the hanger. He received no royalties, and he must be charged with non-use of the patent. Plaintiff contends, however, that a patent is not a paper patent unless it lacks utility, and cites Hartford-Empire Co. v. Obear-Nestor Glass Co., 8 Cir., 71 F.2d 539, 566. Plaintiff reasons from certain dictum in this case that the only significance of non-use of the monopolistic right granted to a patentee is the inference to be drawn that, by reason thereof, the patent lacks utility or is inoperative, otherwise it would have been marketed; that is, just as commercial success of a patented article may bear upon the question of validity, non-use may bear upon the question of lack of novelty. But non-use of a patent does not relate only to novelty, but to the question of infringement as well. As stated in General Motors Corp. v. Kesling, 8 Cir., 1947, 164 F.2d 824, 828, "The issue of 'paper patent' may appear either as a challenge to validity * * * or as a legal reason for constriction of the scope of the patent." The underlying basis for the application of the paper patent theory as applied to infringement is that an inventor is not entitled to restrain the progress of his art by failing to use his invention. His invention is given a narrow range of

equivalents when he fails to utilize his invention so that the progress in the art may continue freely despite the unused patent. Courts are reluctant to give a patent any broader scope than it is clearly required to be given where the patent alleged to have been infringed has never been used. Here, we have a striking example of the justice in according to Glendenning's invention a narrow range of equivalents. Fortner & Perrin assumed to market and sell the Topper hanger under the Kelsey patent. Lynch took no action when he was informed that Fortner & Perrin were manufacturing the Topper hanger under the Kelsey patent. Plaintiff here must be charged with Lynch's inaction then and throughout the years. On September 5, 1956, Glendenning's patent expired without ever having been used.

The article marketed by Fortner & Perrin complied with the claims allowed in the Kelsey patent except that the resilient wire arms have an upward slant, while in the Kelsey patent that slant does not appear. But as stated, upward sloping arms for hanging garments were old in the art. As a practical matter, however, the Topper structure is constructed of much heavier wire than the Glendenning structure. The Topper hanger has bifurcated arms rather than a single supporting arm. Thus, each pants leg is supported by a separate arm, while in the Glendenning hanger the pants are supported by one arm. The downward and outward movement of the bifurcated arms in the Topper hanger occasioned by the weight of the trousers is, at best, minimal.

Through persistent promotion and sales technique, the Topper hanger apparently has met with commercial success. The Glendenning patent has been dormant so far as production is concerned and has remained a paper patent throughout its entire life span. It has been of no value in the art. The novelty, if any, of the Glendenning patent is the U-shaped cuff-engaging element. The Topper structure employs two extending arms with a separate cuff-engaging element for each arm and any semblance to a "U" is merely incidental to the utilization of the two arms which are looped at the ends to effect a cuff-engaging element; that is, the portion of the U-shaped wire hanging element of the Topper patent makes no contribution to the facility of the hanger. If the lower part of the so-called U-shaped loops of the Topper hanger are snipped off and bent back snugly against the outward vertical wires, the Topper hanger would function just as efficiently.

The state of the prior art, the file wrapper history, and the fact that the Glendenning patent is truly a paper patent, fully justify the restriction of the claims thereof in question to the narrow scope indicated herein. One cannot say that the differences between the Glendenning patent and the Topper hanger are substantial, but in such a simple structure as the Glendenning hanger and the narrow scope of protection to be accorded to it, the difference is sufficient to free the Topper hanger from the charges of infringement. Of course, one who has been granted a patent is not required to put the article patented on the market in order to press his claims for infringement. Moreover, there may be situations where the failure to make any contribution to the art is something as to which the patentee is not responsible. There may be circumstances which have made it impossible for the patentee to manufacture and sell his patented device or article. Others may be responsible for the inability of the patentee to go forward and develop for the market and the benefit of the public the patented article. But here there are in the record no extenuating circumstances which would suggest that the doctrine of a narrow scope to be afforded a paper patent in an infringement suit should not be given its full effect.

In view, therefore, of the narrow scope which must be imposed upon the two claims of the Glendenning patent in issue, the Court finds that plaintiff has not sustained the burden of establishing infringement. The above may be con-

**670**

sidered as the Court's findings of fact, and as conclusions of law, the Court makes the following, to wit, that the Topper hanger, as manufactured and sold by Fortner & Perrin, Inc., and as sold by S. S. Mack, Bertha G. Mack (now deceased), and R. J. Krueger, as individuals doing business as G. E. Mack Company, a partnership, the defendants herein, does not infringe Claims 1 and 2 of the Glendenning patent, No. 2,171,693.

It follows, therefore, that plaintiff's complaint must be dismissed and judgment entered for the defendants, with their costs. It is so ordered. An exception is reserved.